# JOHN M. BARRY *vs.* SIMON EDLAVITCH.

*Party Walls—Easement of Support in Wall Wholly on Another's Land —Adverse Possession—Right of Servient Owner to Rebuild and Elevate Wall—Extent of the Easement.*

Where a wall between the houses of plaintiff and defendant is built wholly on defendant's lot, but has been used for more than twenty years as a party wall for the support of the joists, &c., of plaintiff's house, the extent of plaintiff's right is to enjoy the use of the wall for the support of his house as it had existed during the period of pre-scription, and includes the right to use the space between the lines of plaintiff's lot and the wall.

The defendant in such case is entitled to strengthen or rebuild the wall and add to its height, and the plaintiff has no right in or to that part of the new wall which is above the height of the old, and which is not required for the support of the timbers of his house as it formerly stood.

Where an easement of support for joists in a wall is acquired by twenty years possession, it becomes appurtenant to the estate and passes to grantees of the property.

Plaintiff and defendant were owners of adjoining houses. The division wall between them was wholly within the lines of defendant's lot and a few inches from the boundary. The wall had been used for more than twenty years as a party wall, the joists of plaintiff's house being inserted therein. Defendant took down and rebuilt the wall, moving the same a short distance nearer the boundary and making it several feet higher than the old wall, but the new wall was also within the lines of his lot. Plaintiff then raised his house and inserted beams at the top of the new wall, which defendant cut off. Plaintiff also alleged that the rooms in his house had been narrowed by the change in the width and location of the wall. In an action to recover damages, *Held,*

1st. That the plaintiff's easement consisted in the right to use the wall as it had been used during the period of prescription, and this included a right to use the space intervening between the wall and his own line.

2nd. That the wall being the property of the defendant, he had a right to rebuild it and add to its height, if done without detriment to the plaintiff's right of user.

3rd. That the plaintiff had no right to the use of that part of the new wall which is above the old one, and it was no invasion of plaintiff's right to place window openings in such part of the wall.

4th. That if in building the wall plaintiff's house was injured, either by careless construction or by cutting the joists so that his rooms were narrowed, the defendant would be liable therefor.

Appeal from the Superior Court of Baltimore City. This action was brought by the appellee against the appellant, the declaration alleging that the plaintiff was the owner of a lot on the east side of Centre Market Space, and that defendant entered the same and tore down a portion of the walls. The parties were owners of adjoining houses, the plaintiff's house being to the north of defendant's. The wall between the houses consisted of two parts, namely, the front portion beginning on the east side of Centre Market Space and extending eastwardly thirty-six feet, and the rear portion beginning at the end of the thirty-six feet and extending eastwardly about fifty-four feet. The front part was built one-half on each of the two lots, and the rear part of the wall was built wholly on the lot described in defendant's deeds, and was from four to eight inches south of what would be the dividing line between the two houses, apart from any question of adverse possession. The houses stood in this condition for fifty years, and the rear portion of the wall, although wholly within defendant's lines, had been used as a support for the house on plaintiff's lot, and joists, beams and rafters had been inserted in it.

The defendant, desiring to tear down the old building on his lot and erect in its place a new and much larger building, found that the rear portion of said wall was not in condition to support the new building which he proposed to erect, and that it would be necessary to tear it down and build an entirely new and thicker wall. He, therefore, notified the plaintiff of his intention to tear down the rear or easternmost part of the old wall, and requested the plaintiff to take the proper steps to shore up and protect his building. This he did not do, but the defendant, before begin-

ning to tear down the old wall, did shore up and protect plaintiff's house in a proper manner. There is some difference in the testimony as to the manner in which this was done. The front or westerly portion of the dividing wall between the two houses, which was built one-half on the land of each, and extended from Centre Market Space easterly 36 feet, was not torn down, but was raised several feet by being built on top of this part of the old wall. There was no question either of law or fact as to this part of said wall, the entire contention being confined to the rulings of the lower Court as to questions relating to the easterly portion of said wall, beginning at a point some 36 feet easterly from Centre Market Space, and extending thence eastwardly some 54 feet to an alley ; in other words, to that part of the old wall which was wholly on the land of the defendant and was torn down, and in whose place the new wall was built. The old wall was nine inches thick and the new one was thirteen inches thick. The plaintiff's witnesses said that the new wall was moved from four to eight inches north of the north line of the old wall, so that its north side was on the dividing line between the two properties, while the defendant's witnesses said the north side of the wall is the same as that of the old wall, and the whole extra width of the new wall was built south of the south line of the old wall, or so much further in on the appellant's lot.

It was in evidence that the new wall, like the old, is wholly` upon defendant's land. As the defendant built up the new wall he inserted in it the beams and rafters of the plaintiff's house at the same height at which they had been inserted in the old wall, and gave to plaintiff's house the same right of support in the new, larger and stronger wall, which it had in the old one. When the new wall had reached a height of some four feet above the height of the old wall, the defendant left openings for windows in it, which looked over the roof of the plaintiff's house, and inserted window frames in said openings. Thereupon the plaintiff tore off the roof of his house, and built it one story higher, thereby closing

in and rendering useless the windows which had been so left in the new wall, and when he had raised it to a level with the top of the new wall, placed the rafters for his roof on the top of the new wall, thereby securing another and additional support in the new wall from what he had in the old wall. These rafters the defendant pushed and cut off from this new and additional support in the new wall. There was further evidence offered by the defendant tending to show that the old wall was out of plumb, and leaned toward the south, and in order to build the new wall straight, and for no other reason, it became necessary to cut off a small portion of the beams and rafters of the plaintiff's house, which had been inserted in the old wall, and also an inch or two of the steps in the back building of plaintiff's house, which had been built up against the old wall. The plaintiff offered evidence tending to prove that this cutting resulted from the defendant having moved the new wall some inches to the north of the north line of the old wall.

Before beginning the improvements, defendant obtained from plaintiff an agreement dated December 15, 1892, by which the latter agreed " to allow J. M. Barry to remove party wall, provided he replaces the same in 21 working days, weather permitting, the said wall beginning 36 feet, more or less, from the front building line and extending back to the alley."

At the trial, the plaintiff's first prayer, after a recital of the deeds, &c., instructed the jury that if they found that the joists in plaintiff's back building rested in the rear portion of the wall on defendant's lot, and that the same had been used for the common support of said back buildings for more than twenty years, "then plaintiff had the right to use said wall, even though the jury shall find that the wall as it then stood was some distance south of the southernmost boundary of the line of the lot described in the deed to the plaintiff offered in evidence, or some distance south of the northernmost boundary line of the lot described in the deed to the defendant offered in evidence ;

and if the jury shall find that the defendant, sometime about December, 1892, after causing to be torn down said southernmost wall in the rear mentioned in the evidence, the defendant caused to be erected another wall, the north side of which was north of the north side of the old wall, or of any part of the old wall, which he had thus caused to be torn down, and that said new wall was at least one story higher than the old wall, and that the defendant caused a portion of the joists and a portion of the steps of said house of the plaintiff to be cut off, as mentioned in the evidence, and that he thereby, to the extent of between four and five inches or to the extent of eight inches, narrowed the rooms in the plaintiff's house, and that he, the defendant, caused to be put windows in the north side of said wall as re-erected, which windows he has suffered to remain there and they still remain there; and if the jury shall find that the plaintiff built a third story in his back building and put the rafters for the ceiling thereof four inches in said new wall, and the defendant caused said rafters, or a portion thereof, to be cut at their points of connection with said wall, then said acts of the defendant, after tearing down of the old wall, constitute a wrongful interference by the defendant with the property rights of the plaintiff, and the plaintiff is entitled to recover. (*Granted*).

*Plaintiff's 2nd Prayer.*—If the jury find that the wall between the back building of the plaintiff and the defendant had stood without change for more than twenty years, and that during that time it had been used by the plaintiff and his predecessors in ownership of the property as the south wall of the house now on said lot, and was used by the defendant and his predecessors for the same purpose, then the said wall was a party wall and the new wall erected in its place by the defendant was a party wall in its full extent, and defendant had no right to build windows in it, and the building and maintaining of said windows was and is a trespass for which the plaintiff is entitled to recover. (*Granted*).

*Plaintiff's 4th Prayer.*—The plaintiff prays the Court to

instruct the jury, that if they shall find from the evidence that the defendant, in erecting his building to the south of the plaintiff's dwelling, built over and upon the wall then and now standing between the main buildings of his own and the plaintiff's lots, and shall find that the said wall is damaged and weakened thereby, and by using said wall to support a building of an entirely different weight, size and character from that formerly supported by said wall, then plaintiff is entitled to recover.   (*Granted as modified*).

*Plaintiff's 6th Prayer.*—If the jury shall find for the plaintiff, then they shall award him such damages as will be a fair compensation for the injury or injuries which they shall find, under the other instructions in this case, the plaintiff has been subjected to by the defendant; and if they shall find that such acts or any of them, constituting the injuries, were committed in a high-handed and oppressive manner, then they may, in addition, award such damages as they may think proper for the purpose of punishing the defendant.   (*Granted*).

*Defendant's Rejected Prayers.*—1st. The defendant prays the Court to instruct the jury, that if they believe from the evidence that the house of the defendant adjoined the house of the plaintiff on the south, and that the wall between the two houses was built partly on the land of the plaintiff and partly on that of the defendant, and that for a period of more than twenty years said wall had been used as a party wall by the owners of plaintiff's and defendant's houses, and was so used when the alterations complained of were made in said wall by defendant, the plaintiff is not entitled to recover, provided they further find that in carrying up said wall the defendant did not injure or impair said wall as originally built.   (*Rejected*).

2nd. That even if the jury should find that said wall, as originally built, was injured or impaired by so carrying it up, the plaintiff can only recover to the extent of said injury or impairment, as shown by the evidence.   (*Rejected*).

8th. That if the jury believe that the portion of said wall

specified in said agreement of December 15th, 1892, was situated wholly within the metes and bounds of the defendant's deed, he was entitled to tear down and replace the same without reference to any agreement on the part of the plaintiff, provided he used due care, caution and diligence in so doing.  (*Rejected*).

11th.  That if the jury believe that the western portion of the wall dividing the houses of the plaintiff and defendant was built one-half on the property of the plaintiff and one-half on the property of the defendant, and was then used as a partition wall by both of said houses for more than twenty years, the defendant had a right to raise it, and to chip off the portion of the bricks of said wall on the defendant's property, provided he restored said division wall to as good a condition as it was in prior to so raising it, and the plaintiff cannot recover as to said part of said wall if they believe that said wall is now in as good condition as before it was so raised.  (*Rejected*).

12th.  That if the jury shall believe that the whole of the eastern portion of the wall separating the houses of the plaintiff and defendant was located within the metes and bounds of the defendant's deed, the defendant had a right to put the windows spoken of in the evidence in said portion of said wall, provided they were placed in the portion of said wall above that originally used as a partition wall by both plaintiff and defendant, and plaintiff is not entitled to recover therefor, unless the jury believe that the original support of plaintiff's house was injured thereby. (*Rejected*).

13th.  That under the building inspection laws of Baltimore City, if said eastern portion of said wall was unfit for the purposes of the new wall to be erected, the defendant was entitled to tear down, rebuild and raise the wall separating the houses of plaintiff and defendant, provided he restored the same to as good a condition as it was in before it was so torn down, raised and rebuilt.  (*Rejected*).

14th.  That it being admitted that the whole property of both plaintiff and defendant belonged to the same person,

and that the separate title to the defendant's lot is the elder, it is superior to the plaintiff's title in any question of contest as to ownership of any property claimed by each. (*Rejected*).

15th. That the plaintiff has no title to the strip of land embraced within the lines of defendant's deed, unless they find either that said strip was included within the lines of the plaintiff's deed, and those of his predecessors in title for more than twenty years, or else that the plaintiff himself or his heirs was or were in possession of the same for more than twenty years continuously, and claiming the same adversely. (*Rejected*).

16th. If the jury believe from the evidence that plaintiff and his predecessors in title believed that their holdings corresponded with the descriptions of the property in their respective deeds, and did not intend to claim anything beyond the metes and bounds in said deeds contained, then the plaintiff acquired no title to the strip of land on the north of the wall on the south side of defendant's property, if they believe there was any such strip, and the plaintiff cannot recover for any change in the location of said wall towards the north, even if they believe there was such removal, if they further believe that the new wall built between the plaintiff's and defendant's house is located within the metes and bounds contained in defendant's deed, and that the defendant used due care and diligence in tearing down and rebuilding the same, and the plaintiff's house has been allowed a support in the new wall in the manner to which it was accustomed in the old wall. (*Rejected*).

The Court below (RITCHIE, J.), granted all of the plaintiff's prayers with certain modifications and rejected those offered by the defendant, which are above set forth. The granted prayers of the defendant were to the effect that he had a right to alter the wall, if done in such a manner as not to injure the plaintiff and with due care. The jury returned a verdict for the plaintiff for $450.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE and BOYD, JJ.

*Henry C. Kennard*, for the appellant.

The appellant will contend that even in a case of a regular party wall, built one-half on the land of each of two contiguous owners, while, from the necessity of the case, each owner is entitled to tear down the whole wall, as well that on his own land as that on the adjacent owner's, for the purpose of improving his "own property according to his interest and inclinations," (78 Md. 361), yet the only right which the adjacent owner has in this new wall is to have in it the same right of support it had in the old one. (Ib). The ownership or property in each portion even of such a division wall continues in severalty in the proprietor on whose ground it stands. (Ib).

By way of enlarging this right of an adjacent owner in this kind of party wall, our building laws provide that such co-terminous owner may have a greater use of the new wall than he had of the old (following out the legislative grant of power, 1 *Code Pub. Local Laws*, Art. 4, sec. 122), if he compensates the one who built it to the extent of one-half the cost of the portion used in excess of the use of the old wall. *Balto. City Code, 1892*, Art. 4, sec. 9.

Several cases were cited by the appellee in the lower Court in which the Court ruled as to a party wall, built one-half on the property of each adjacent owner, that the owner building the new wall above the height of the old wall has no right to insert windows in any part of it; but it will be observed that the ruling in each case was confined to that kind of wall, and in most cases was based upon statutory provisions or express contract. See—*Dannenhauer v. Devine*, 51 Texas, 480 ; *VanSickle v. Bryson*, 6 Phil. Rep. 401 ; *St. John v. Sweeny*, 59 How. Prac. 175 ; 61 *Penn. St.*, 118, 128–9 ; 35 *Iowa*, 531–2. The case of *Putzell v. Drovers' and Mechanics' Bank*, 78 Md. 360, seems to be adverse to the application of this doctrine in this State, even

in a case where the wall is partly on the property of each. This Court says : "The bank *retained all its rights in the division wall which are not inconsistent with the enjoyment of the easement.* It was bound to permit it to be used as a support for Putzell's house *in the accustomed manner ; but this is the limit of its obligation."* In the present case, however, there is no question of the respective rights of the parties in a wall of this character, there being no openings left or rafters cut on that part of the wall built partly on the land of each, but solely in that part of the wall built wholly on the land of the appellant. It is respectfully contended that the appellee's rights in such a wall were confined to the easement which he had acquired in the old wall. He had no right to tear the old wall down, or to use it in any way, other than it had used it before ; and, if he desired to improve his property, he would have to build a new wall on his own land in the absence of an agreement to the contrary. See *Price* v. *McConnell,* 27 Ill. 257 ; *McLaughlin* v. *Cicconi,* 141 Mass. 253 ; *Glenn* v. *Davis,* 35 Md. 218 ; *Moore* v. *Rayner,* 58 Md. 420–1 ; *Tiedman on Real Property ;* sec. 612—*Light and Air ;* 1 *Code Pub. Gen. Laws,* Art. 21, sec. 1, p. 251 ; *Price* v. *McConnell,* 27 Ill. 259.

The twelfth prayer of the appellant asks the Court to instruct the jury that if they believed that the whole of the eastern portion of the wall separating the houses of the plaintiff and defendant (appellee and appellant) was located on the property of the defendant (appellant), the appellant had a right to put the windows spoken of in the evidence in said portion of said wall, provided they were placed in the portion of said wall above that originally used as a partition wall by both plaintiff and defendant, and plaintiff is not entitled to recover therefor, unless the jury believe that the original support of plaintiff's house was injured thereby." This prayer the Court rejected and granted the first and second prayers of the appellee, which announced the proposition that, even granting that the whole wall was built on the land of the appellant, yet the adverse use of this wall for

more than twenty years as a support for the beams of the appellee's house gave the appellee an *ownership* in such wall which made the cutting of the windows in the part of the new wall above the height of the old wall, a trespass, for which the appellee was entitled to recover. Even if this Court should hold that the wall in question was a party wall in its fullest sense, and the appellee was entitled to use the new wall to its entire height, the only right the appellee had was to demand that the windows be closed up, so that it might be so used, and, in the absence of proof of such request by the appellee and refusal by the appellant, appellee is not entitled to recover.

*Jacob J. H. Mitnick* and *J. Markham Marshall* (with whom was *William L. Marbury* on the brief), for the appellee.

The important questions in the case would appear to be the following : 1. Had the defendant the right to move the plaintiff's rear wall northward, to cut his joists and steps and to narrow the rooms of the plaintiff's house ? 2. Had the defendant a right to maintain windows in the new rear wall over the line of the old wall, and was the new wall a party wall to its full extent ?

*First.*—It is conceded, that the wall in question was used as a wall for the common support of the two houses for at least fifty years, and the houses had stood, immediately prior to the rebuilding, in the same condition as they had stood for the last fifty years. If the plaintiff himself had been in possession of the property for fifty years, it is not seriously denied by the appellant, that he would have acquired the right to use the wall by prescription, and the title to the four or eight inches between the line of the deed and the line of the wall by adverse possession. Titles depending upon possession no stronger than the possession conceded to have been had in this case have been held marketable titles by this Court in *Lurman* v. *Hubner*, 75 Md. 268 ; *Bay* v. *Posner*, 78 Md. 49 ; *Gump* v. *Sibley*, 79 Md. 169, and *Foreman* v. *Wolf*, 79 Md. (unreported case).

But it is argued, that because the descriptions in the deeds do not include this strip of between four and eight inches, therefore it did not pass to the successive owners; and as the plaintiff only purchased his property a few years before the moving of the wall and the cutting of the joists, and the strip of between four to eight inches was not included in his deed, therefore the plaintiff is not in a position to complain of said acts of the defendant. It must be remembered that in the chain of title of the appellee or plaintiff, a certain John Brannt was possessed of the property for more than twenty years. Even if this were not sufficient to confer the title on the plaintiff to this strip of between four and eight inches in width, yet it was sufficient to bar the rights of the defendant's predecessors; and, although the plaintiff might not have any title as against Brannt and his heirs, yet *being in actual possession*, and the *defendant having no title*, the defendant would stand in the position of a mere wrongdoer.

But, it is submitted, the plaintiff had the full title to this strip. The exact question, whether title passes to a strip of this character, which was acquired by the grantor by adverse possession, and which is possessed together with property acquired by deed, and where the grantor conveys by the metes and bounds of the deed only, was very recently considered by the Supreme Court of New Jersey in the case of *Davock* v. *Nealon*, 32 Atlantic Reporter, 675, and it was decided that the grantee takes the whole lot. The official syllabus of the case by the Court is as follows: "Where one incloses and possesses more land than is covered by the description in his deed, and sells to another by the same description, who enters in possession of all the land inclosed, the successive possession can be tacked." After stating that there is a conflict of authority as to whether the benefit of adverse possession must be transferred by writing, or whether it may be transferred by parol, the Court say: "But the question here presented is this: If one, holding the legal-paper title to a piece of land, in inclosing it, includes within the inclosure a piece of adjoining land, enters into possession

of the entire inclosed tract and then transfers his legal-paper title to another, who goes into possession of the entire inclosed tract, can the two adverse possessions be tacked? *Now, it is perfectly obvious, that the deed followed by possession of the whole tract, is intended to operate as a conveyance of the possession of all within the inclosure.* The legal title passes, as to so much of the lot as is within the description in the deed, *but the deed, aided by the inclosure, and the actual transference of possession of the rest as of a part of the lot sold, is sufficient evidence a transference of possession to raise the required privity between them.*"

It is submitted that the doctrine announced in the above case is sound and should be adopted. As a matter of fact, very few possessions coincide exactly with the lines of the deed, and yet the successive owners almost invariably convey by the lines of the deed, although they deliver possession of all they have. If, after the lapse of fifty years (and the same might be said after the lapse of one hundred years) it can be maintained that no benefit shall accrue to the last owner from the fifty or one hundred years of possession of the narrow strip, because the same is not included in the deeds, although each successive owner possessed it, as if it were part of the property embraced in the deed, then the Statute of Limitations is defective in a most important particular, and in a matter of daily occurrence. But, apart from this, we submit that the title to this narrow strip passed to the plaintiff on the following grounds: The title to the use of the rear wall certainly was acquired by prescription more than thirty years before the institution of the suit, the joists and beams of the plaintiff's house having rested in said wall for more than fifty years. *Dowling* v. *Hennings*, 20 Md. 179; *Brown* v. *Werner*, 40 Md. 15.

The appellant further argues, that his prayer should have been granted, submitting to the jury the question as to whether the possession was by mistake, *and without any intention to claim title.* It is submitted that, not only was there no evidence to support this prayer, but the entire testimony,

including the admissions of the defendant as to the fact that the plaintiff's joists had rested in the wall in question, was inconsistent with the theory of the prayer, and there was a special exception to the prayer for want of evidence. The appellant's counsel seems to treat these two separate elements, namely, the taking possession by mistake and the lack of intention to claim title, as being one and the same thing. An examination of the authorities will, however, disclose that the taking possession by *mistake* is no obstacle to the running of the statute. It is only where there is, in addition, no *intention to claim title,* that the statute does not run ; and that there are certain overt, unequivocal acts (such as in this case, the building of a portion of the house over the strip), which leave no room for inquiry as to the intention. *Abbott* v. *Abbott,* 51 Maine, 584 ; *Worcester* v. *Lord,* 56 Maine, 269 ; *Wallbrun* v. *Baller,* 68 Missouri, 116.

As to the contention of the appellant, that the first prayer of the plaintiff allowed the jury to find for the plaintiff, even if the cutting of the joists and steps of the plaintiff's house was occasioned by the straightening of the wall, which leaned towards the south, it is sufficient to say that the point was not raised in the Court below ; that the prayer did not so instruct the jury, and is not liable to that construction, and if it were it would be correct, anyhow. If, as a matter of fact, the joists and steps were in a certain position, where they had been for fifty years, the defendant had no right to cut them, even for the purpose of straightening his wall, there being no contention that the wall was unsound. We further submit, that many of the questions above discussed have been settled by the fact that defendant obtained an agreement from the plaintiff to allow him to tear down " party wall " and replace *same.* After thus dealing with the plaintiff, he was *estopped* from building a wall, *any part of which* was north of the old *party wall.*

2. As to the right of the defendant to maintain windows in the wall in question over the second story. If the wall, as re-erected, was from four to eight inches on the plaintiff's

ground, then clearly the defendant could have no right to maintain windows in the wall. But even if it had remained on the old site, the defendant had no right to put windows in the wall. A wall may be a party wall, though it stand wholly on the land of one of the parties. *Brown* v. *Werner*, 40 Md. 15. And without an agreement between the owners of the property allowing them, windows have no proper place in party walls. This is evident from the uses and objects of party walls, with which windows are inconsistent. *Normile* v. *Gill*, 159 Mass. 427, and cases there cited; *St. John* v. *Sweeney*, 59 Howard Practice, 175; *Graves* v. *Smith*, 87 Ala. 450. The wall was a party wall to its full extent. *Graves* v. *Smith*, 87 Ala. 450; *Field* v. *Lighter*, 118 Ill. 17; *Brooks* v. *Curtis*, 50 N. Y. 639.

PAGE, J., delivered the opinion of the Court.

Simon Edlavitch, the appellee, brought this action against John M. Barry, the appellant, to recover certain damages alleged to have been committed to the property of the former by the latter. The *narr.* alleges, that the defendant broke and entered the plaintiff's premises, and "tore down a portion of the front wall," and "a large portion of the southernmost wall of said improvement," and other wrongs, etc.

It appears that the parties are respectively the owners of adjacent houses on Centre Market Space, in Baltimore City. The entire wall, between the lots, has been used for the support of both houses, for fifty years. From Centre Market Space, eastwardly for thirty-six feet, it is built, one-half on each lot; but the remainder being nine inches in thickness, and extending eastwardly fifty-four feet to an alley in the rear stood entirely on the lot of the appellant. Barry, desiring to improve his lot, obtained from the appellee an agreement, to allow him "to remove party wall, providing he replaces same in twenty-one working days, weather permitting, the said wall being 36 ft., more or less, from the front building line, and extending back to the alley." He then tore down

this part of the wall, and in its place built a new fourteen inch wall, wholly within the metes and bounds of his own deed, and raised it some fifteen or twenty feet higher than the height of the old wall. Four feet above the plaintiff's roof he left openings in the new wall for windows, and inserted frames therein.

The plaintiff offered evidence to show that in building this portion of the wall, the defendant had moved it from four to eight inches, over towards the plaintiff's lot, and in order to so move it the ends of the beams and joists and steps of Edlavitch's house were cut off. This the defendant denied, and offered evidence to prove, that the new wall was not moved, but was built on the line of the old wall; the additional width being on his own premises; also, that the old wall leaned to the south, and that the cutting of the beams and steps in the plaintiff's house, was necessitated by reason of the new wall being made straight. That these beams were inserted at the same height in the new wall, and gave the plaintiff's house the same support, that it had in the old. Subsequently the plaintiff built his own house one story higher; and in so doing closed in the window-openings, and sought to use the new wall for his upper story, by inserting beams in that part of it, which was above the top of the old wall as it stood originally. Both parties offered evidence, the one to show the work was not carefully and properly done, and that the old wall was sufficient for the uses to which it had been applied; the other, that every possible care was observed in tearing down the old wall, and in erecting the new; and that the old was unsafe to build on it the structure he proposed to erect.

The controversies now to be considered, relate to the respective rights of the parties, to the use and enjoyment of the easternmost portion of the wall. This, as has been stated, stands entirely upon the land of the defendant, and has been used for more than twenty years for the common support of the house of the plaintiff as well as that of the defendant. The plaintiff contends that under these circum-

stances it became by prescription a "party wall in the fullest meaning to be attached to such words."

The term "party wall," is usually applied to such walls, as are built partly on the land of another, for the common benefit of both, in supporting timbers, used in the construction of contiguous buildings. And "a division wall may become a party wall by agreement, either actual or presumed, and although such wall may have been built exclusively upon the land of one, if it has been used and enjoyed in common by the owners of both houses for a period of twenty-years, the law will presume in the absence of evidence showing that such use and enjoyment was permissive, that the wall is a party wall. In such cases the law presumes an agreement between the adjacent owners, that the wall shall be held and enjoyed as the common property of both." *Brown* v. *Werner*, 40 Md. 20. The case just cited was an action to recover damages for injuries occasioned by the careless manner in which the adjoining house was improved, and the decision must be regarded in the light of its particular facts.

The scope of the Court's rulings was that the user therein shown, was sufficient to enable the jury to find the wall to be a party wall, and that neither party had authority to interfere with it, without the consent of the other, unless he could do so without injury to that other's possession.

But it in no wise impeaches the general doctrine, that in cases of prescription, the terms of the presumed grant are fixed and determined by the user in which it originated. Possession *per se*, can never afford the presumption of a grant, so as to conclude the real owner. The possession must be open, known to the other party, and adverse to some right in the owner. It is only from the fact that such possession, amounting as it does to a continuous claim of title, has been acquiesced in for twenty years, that the presumption of a grant is afforded. So that, from the very statement of the nature of title by prescription it is obvious that the presumed grant can never extend farther than the

user, in which the other party has acquiesced.  These principles are so well established as to require no citation to support them.  They are applicable to the acquisition of easements.  *Washburne on Easements*, 74 Marg. (3rd ed.); *Parker* v. *Foote*, 19 Wendel, 313.  And we think are fully sustained by the decisions of this Court.  In *Dowling* v. *Hennings*, 20 Md. 183, the Court said, the manner of the construction of the buildings implied an agreement between the builders, that each should have a right of support, or easement in the ground of the other, so far as necessary to maintain the alley for mutual use and the partition wall for the common support of the two houses ; and while no other inference would seem possible, yet, " the right claimed by the appellee could not be sustained by the simple implication of such agreement.  The right of support or easement, etc., is of such a character that it must have originated in a grant, either actual or presumed as matter of law, from the facts shown by the evidence in the case."  The Court then, after having shown that the mutual use of the alley and wall was adverse to and inconsistent with the separate rights of the parties, proceeded to state that the use of the alley and walls raises the presumption of " mutual grants for such enjoyment, for the time the two houses should be capable of safe and beneficial occupation."  So also in *Putzel* v. *Drovers' Bank*, 78 Md. 360, this Court uses language entirely in accordance with the view above expressed ; they say :  " Under these circumstances the law considers that he had a prescriptive title to the use of it (the division wall), in the manner in which he had enjoyed it. *  *  To the extent of such use his title is clearly established.  *  *  *  The bank retained all its rights in the division wall which are not inconsistent with the enjoyment of the easement.  It was bound to permit it to be used as a support for Putzel's house in the accustomed manner ; but this is the limit of its obligations."

The cases cited by the appellee in no wise are in conflict with these views.  In *Graves* v. *Smith*, 87 Ala. 451, there

was an agreement, which in terms created a party wall, with the right to the appellant to use the same, "in the erection of any building which he may wish to build on his own lot." The Court held under these circumstances that the cross-easement of appellee was "violated by the attempt of the defendant to create openings for the windows." So in *Brooks* v. *Curtis*, 50 N. Y. 642, the language of the deeds and the acts of the parties show that it was their intention that the wall, which stood one-half on each lot, should be a party wall for the common use of both lots, and that such an easement included the right to increase the height of the wall, provided it be done without detriment to the strength of the wall or to the property of the adjacent owner. And in *Field* v. *Leiter*, 118 Illinois, 23, the character and scope of the cross-easement was made to depend upon the construction of the agreement between the parties. On the other hand, in *McLaughlin* v. *Cecconi*, 141 Mass. 254, where the party claimed by adverse user, the Court held that the defendant could continue to burden the wall to the extent of her use ; "but she cannot enlarge or add to the rights acquired by adverse occupation, except by some other title." *Matthews* v. *Dixey*, 149 Mass. 597 ; *Everett* v. *Edwards*, 149 Mass. 591.

Now in this case, the wall in question stands wholly on the land of Barry, and there is nothing in the case, beyond this fact, to explain the use of the wall by Edlavitch. Such use, it is not perceived could be of benefit to Barry. It was a mere burden upon his property, open, adverse and acquiesced in by him. No other inference whatever can be drawn from its existence, except that which the law implies, viz., a grant to do the things that had been done for so long a time. There is nothing in the case from which it can be presumed that either party intended that the wall should be a party wall, except to the extent and for the purpose of supporting the appellee's building, as it had been supported for so many years. That was, therefore, the extent of the appellee's right, namely, to enjoy the use of the wall for

the support of his house as it then existed. The wall being the property of the appellant and on his own lot, there can be no reason assigned why he could not strengthen it and add to its height if he chose to do so; provided it was done without detriment to the other party's right.

And it follows also, necessarily, that the appellee has no rights in or to that part of the new wall which is above the height of the old, and which is not required for the support of the timbers of his house as it formerly stood; and if this be so, there was no invasion of his rights by the placing of openings for windows in such part of the wall. *Weston* v. *Arnold*, 43 L. J. Ch. N. S. 123.

The right of the appellee was to maintain the support of his house as it had been for twenty years or longer, and therefore, if in the rebuilding of the new wall his house was, without his consent, detrimentally affected by injuries occasioned either by careless construction; or by cutting his joists and steps, so that now they are no longer as they were; or the rooms were narrowed, the appellant would be responsible although such cutting was rendered necessary by the straightening of the new wall. In a word, the appellee had a full right to maintain his easement to the extent of the ancient user; and any encroachment thereon by the appellant was an invasion of his rights.

The record shows, that by the description contained in his deeds, the appellee's lot does not include a strip of land between four and eight inches wide to the north of the wall; and if this be so, it is contended the appellee is not entitled to tack his possession to that of his predecessors, and his case must fail for want of title to that portion of the building and lot which lies between his south line and the wall in question. But we do not think this case raises such a question.

It is conceded that John Brannt, under whom the appellant claims, occupied the lot for more than twenty years, and during the whole of his possession used the wall for the support of his house in the same manner and to the

same extent as did those (including the appellee) who after-
wards owned and occupied it.   Such possession, therefore,
undoubtedly was sufficient to and did confer upon him a
title to the easement, whatever its nature was.   Now, what
was the full extent of his easement?   He not only acquired
a right to the use of the wall to support his house, but also
to do that which was obviously necessary to the enjoyment
of that right ; that is, to occupy the space intervening be-
tween the wall and his own line.   The easement which the
adverse possession conferred upon him, included an ease-
ment to use the soil that intervened between his property
and the wall.   The grant of an easement carries with it all
that is absolutely necessary to the enjoyment of it.   1 *Wm.
Saunders* 323, note 6 ; *Washburne on Easements* 25 (star
paging).   He acquired no title to the soil.   His right was
merely an easement over it ; to use it, as appendent to the
principal easement of a right of support, in the wall of the
adjoining proprietor, and necessary to its enjoyment.   *Leon-
ard* v. *White*, 7 Mass. 6 ; *Nicodemus* v. *Nicodemus*, 41 Md.
536.   In *Dowling* v. *Hennings*, 20 Md. 182, the party wall
was constructed on an arch supported by walls built on each
lot.   Dowling proposed to take down such parts of the
arch as were on his own lot, and improve to the line of the
adjoining lot.   It was held that the parties had the use of
the alley and alley's walls, for the time the two houses
should be capable of safe and beneficial occupation.   It was
not contended that title to the soil of the alley was affected
by the adverse user, and the Court did not so decide.   What
it did hold, was, that each party had an easement in the
walls and over the alley, so long as the two houses should
be capable of beneficial occupation.

Such was the nature of the easement Brannt acquired by
his possession.   It became consummate in his lifetime, and
thereby also became appurtenant to his estate.   It there-
fore passed by the several conveyances, to the successive
owners, and is now in the appellee.   Each deed in the chain
of title conveys the building, rights and appurtenances

thereto belonging; and even if this were not so, the easement being in fact appurtenant, would pass without the word appurtenant being used in the deed. *Ritgar* v. *Parker*, 8 Cush. 145; *Barnes* v. *Lloyd*, 112 Mass. 224; *Coolidge* v. *Hager*, 43 Vt. 9; *Whetherill* v. *Brobst*, 23 Iowa, 591.

It only remains to apply these principles to the instructions asked for by the parties and allowed or rejected by the Court. The first and second prayer of the plaintiff denies the right of the appellant to the exclusive use of that part of the new wall which is above the height of the old, and for that reason should not have been granted. The same objection lies to the second. The converse of this proposition is stated in the appellant's twelfth prayer, which should have been granted. The appellee's fourth and sixth prayers were not objected to at the argument—nor was the rejection of the first, second and eleventh instructions asked for by the appellants.

The appellants' eighth, thirteenth, fourteenth, fifteenth and sixteenth prayers we think were properly rejected. The eighth and thirteenth ignore all the rights of the appellee, and are defective for that reason.

For error in granting the plaintiff's first and second prayers, and in rejecting the defendant's twelfth, the judgment must be reversed.

*Judgment reversed and new trial awarded.*

(Decided June 18th, 1896).