WILSON *v.* WATERS ET AL.

[No. 73, October Term, 1948.]

*Decided February 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

Submitted on brief by *John L. Clark, Maurice J. Press-man* and *J. Paul Rocklin* for the appellant.

Submitted on brief by *Charles E. Hogg, Ann S. Mus-grave* and *William H. Forsythe* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

The record in this case contains three appeals taken by Elsie Wilson from three judgments entered against

her in the Circuit Court for Howard County. The judgments were recovered by plaintiffs in three suits for damages for barricading a road over her land from plaintiffs' four houses to Cissell Avenue in the village of North Laurel.

Plaintiffs houses were built more than 75 years ago and are commonly known as "Four Block." They are located on lot 42, which has a frontage of 50 feet on Cissell Avenue and a depth of 150 feet, as shown on the plat of the village. Thomas M. Waters and wife own the northern house and also the adjoining house in which they live. Joseph M. Burley, Jr., and wife own and occupy the third house. The southern house is owned by Joseph, Kenneth and Samuel Burley, sons of Joseph M. Burley, Sr., who died in 1937. Defendant owns lot 43, situated south of lot 42.

Plaintiffs alleged in the three suits that for more than twenty years they had used the road along the northern line of defendant's land as a means of access to the rear of their houses, but on April 15, 1946, defendant erected a fence along the northern line, and also a gate across the road at the intersection of Cissell Avenue, and locked the gate, and subsequently removed the gate and extended the fence across the road, thereby depriving them of its use. The three suits were consolidated and tried together. After the trial court denied defendant's motions for directed verdicts, the jury awarded a verdict in favor of plaintiffs for the sum of $5 in each case.

Plaintiffs did not claim an easement in the land by grant. They claimed a right of way by prescription. It has always been the law in Maryland that no person who has a right of entry into any land shall enter thereinto but within twenty years after his right of entry accrued. This rule was embodied in the Statute of *21 James I*, ch. 16 enacted by Parliament in 1623. *2 Alexander's British Statutes,* Coe's Ed., 599. It is now in force in Maryland by virtue of Article 5 of the Maryland Declaration of Rights, which proclaims that the inhabitants of Maryland are entitled to the Common Law of England and

also to the benefit of such of the English statutes as existed on July 4, 1776, and which "have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity." *Safe Deposit & Trust Co. of Baltimore v. Marburg,* 110 Md. 410, 414, 72 A. 839. But it is well settled that adverse possession sufficient to give marketable title to land must be open and notorious, continuous and exclusive. *Gittings v. Moale,* 21 Md. 135, 148; *Peper v. Traeger,* 152 Md. 174, 181, 136 A. 537.

While the Statute of Limitations does not apply to adverse user of another's land by mere enjoyment of an easement, nevertheless the statute applicable to re-entry into land has been made applicable by analogy to incorporeal rights. It is well established that to acquire an easement by prescription, the claimant must prove adverse, exclusive and continuous use for twenty years. *Waters v. Snouffer,* 88 Md. 391, 41 A. 785; *Smith v. Shiebeck,* 180 Md. 412, 419, 24 A. 2d 795; *Condry v. Laurie,* 184 Md. 317, 41 A. 2d 66; *Punte v. Taylor,* 189 Md. 102, 111, 53 A. 2d 773, 777. We recognize, however, that while adverse possession, sufficient to establish title in fee simple, must be absolutely exclusive, the user essential for establishing an easement is exclusive in the limited sense that the claimant's right must not depend for its enjoyment upon a similar right in others, and, though claimant may not have been the only one who used it, he used it under a claim of right independently of all others. *Cox v. Forrest,* 60 Md. 74, 80; *4 Tiffany, Real Property,* 3d Ed., sec. 1199.

In this case the testimony concerning the location and width of the road, which plaintiffs swore positively they had used more than twenty years, was sufficiently definite to warrant submission of the case to the jury. Waters, age 74, testified that the road was there when he moved to "Four Block" 35 years ago, and that he had used it continuously until it was barricaded by defendant. Kenneth Burley, age 44, testified that there had been a dirt road there ever since he was "big enough to know." He

swore that he had used it ever since 1926, when he bought his first automobile. Elmer F. Warner, who had driven over the road to deliver feed, paint and other supplies from a store in Laurel, testified that the road was there when he started to school more than a quarter of a century ago. He described the road as a country lane between 18 and 20 feet wide.

Defendant's main contention is that there was no legally sufficient evidence that plaintiffs' use of the road was exclusive. She claims that when she bought her lot in 1934, it was unenclosed and unimproved, and that there was no road on the lot until one was made for hauling building materials when she built her house; and that any use of the road by plaintiffs was merely in connection with permissive use by the general public. It may be stated as a general rule that when a person has used a roadway over the land of another openly and continuously and without objection for twenty years, it will be presumed that the use has been adverse under a claim of right, unless it appears to have been by permission. To prevent a prescriptive easement from arising from such use, the owner of the land has the burden of showing that the use of the way was by license inconsistent with a claim of right. *Cox v. Forrest,* 60 Md. 74, 80; *Condry v. Laurie,* 184 Md. 317, 41 A. 2d 66. On the other hand, where the land has been used by the general public by implied license, it will be presumed that the use of the land by a neighboring landowner was not adverse, but permissive, unless there was some distinct act indicating an exclusive use under a claim of right and distinguishable from the general use. *Pirman v. Confer,* 273 N. Y. 357, 7 N. E. 2d 262, 111 A. L. R. 216. In applying this rule in a Massachusetts case, Chief Justice Shaw said: "A regularly formed and wrought way across the ground, paved, macadamized, or graveled and fitted for use as a way, from his own estate to the highway, indicating a use distinct from any use to be made of it by the proprietors, would, in our opinion, be evidence of such exclusive use and claim of right. So would be any plain, unequivocal

act, indicating a peculiar and exclusive claim, open and ostensible, and distinguishable from that of others." *Kilburn v. Adams*, 7 Metc., Mass., 33, 39 Am. Dec. 754, 756.

It is true that some courts have ruled that the fact that land, over which a right of way is claimed, was "unenclosed" raises a presumption that the use was permissive. By that ruling, however, the courts have occasionally been misled to establish easements over vacant lots in urban districts, although the lots had been cleared and cared for. Thus it seems that the more appropriate term in such cases is "unimproved." *Worrall v. Rhoads*, 2 Whart., Pa., 427, 30 Am. Dec. 274; 170 A. L. R. 820. In any event, we think that, since the lot in question has a depth of only 150 feet, this case is not exactly like those cases in which the land over which the right of way is claimed is wild land, woodland, or other land in a general state of nature. In such cases it may be presumed that use of the land is permissive, because it is the custom of neighboring owners to travel over such land for pleasure or convenience, and the owners usually make no objection to their doing so. In this case plaintiffs testified that, although they had never asked anyone for permission to use the road, they undertook to keep it in repair. Waters testified that the road did not require very much repairing, but that they had "kept it up pretty well." Kenneth Burley likewise testified that they had kept up the road by putting stones on it whenever it was in bad condition, and also when they plastered the house they put a lot of plaster on the road. These acts were open and notorious and indicated a distinct use distinguishable from the general use.

Plaintiffs admitted that no one was denied use of the road. Tradesmen used it in delivering coal, fuel oil, wood and ice, paint, feed and other supplies. Hogs were driven down the road to the pen in the back yard. L. Edwin Carr, while acting as deputy sheriff over twenty years ago, went over the road to search for dogs without license tags. Ridgely Selby, an undertaker, used the road in moving the dead. He swore that the road was

the same in recent years as it was in his youth, when he hauled coal over the road from the coal yard. It is evident that the road became very useful for the occupants of the four houses. However, we do not consider the tradesmen, the deputy sheriff, and the undertaker as the general public exercising an implied license. They were visitors whose right of passage was based upon the claim of right of the owners of the houses. *Jean v. Arseneault,* 85 N. H. 72, 153 A. 819.

Moveover, no effort was made to establish the status of the narrow dirt road as a public street. It was not contended that the authorities of Howard County ever recognized the road as a highway. We adopt the rule that if a road led at its start only to the premises of the persons using it, such circumstance is sufficient to prove their user under a claim of exclusive right, in the absence of proof to the contrary. If a road, which was started in such a manner as to make the user adverse and exclusive, is afterwards enjoyed in common with the public, the user does not lose its exclusive character as the result of the joinder of the public therein. *Hall v. Backus,* 92 W. Va. 155, 114 S. E. 449. Since plaintiffs testified that they had used the road in this case without objection for more than twenty years, we think the jury had the right to determine that defendant and her predecessors in title would not have acquiesced in the user of the road for so long a period, when it would have been to their interest to have stopped it, unless they believed that the parties using it had a right of way, of which they should not be deprived. The right of way cannot prejudice anyone except the present owner, who waited many years before she barricaded the road. An easement over her land by prescription is sanctioned by public policy.

We hold that the trial court ruled correctly in denying the defendant's motions for directed verdicts. The three judgements entered upon the verdicts of the jury will therefore be affirmed.

*Judgments affirmed, with costs.*