CLAYTON, ET UX. *v.* JENSEN, ET UX.

[No. 470, September Term, 1964.]

338

*Decided November 12, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY and BARNES, JJ.

*Samuel J. Friedman* for appellants.

*R. Taylor McLean*, with whom were *Royston, Mueller, Thomas & McLean* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

This appeal involves an action at law in the Circuit Court for Baltimore County brought by John D. Clayton, Jr. and Dorothy M. Clayton, his wife (the Claytons) against Lyder H. Jensen and Mary Dale Jensen, his wife (the Jensens) and Ellwood Roy Campbell and Catherine Margaret Campbell, his wife (the Campbells) for damages allegedly resulting from the obstruction by the Jensens and Campbells of an easement of way obtained by prescription across the land of the Jensens and Campbells to the garage of the Claytons. Judge Turnbull, sitting without a jury, granted a motion of the defendants (the Jensens and the Campbells) for a dismissal of the action at the end of the plaintiffs' (the Claytons') case pursuant to Maryland Rule 535 and entered judgment in favor of the defendants for costs. This appeal followed from that judgment.

The evidence, which is uncontradicted, established the following: The Claytons acquired the property 6209 Elmbank Road in Baltimore County (the Clayton property or the dominant tenement) on August 30, 1963 from Mr. and Mrs. Charles Schwarz, the father and mother of Mrs. Clayton. This property appears to front on Elmbank Road approximately 190 feet and the dwelling fronts on that road. The property is triangular in shape. The northeasterly side of the triangle is a broken line with distances of 51 feet and 235 feet respectively. The southeasterly side of the triangle, which adjoins the Campbell property is 231 feet. There is a steep grade running from Elmbank Road to the southeast. A garage was built some distance to the rear of the dwelling sometime prior to November 5, 1925 when a Miss Corrie Smith owned and lived in the Clayton property. Because of the steep grade it is impossible to get to the garage from Elmbank Road. Miss Smith used the garage for parking her automobile and had ingress and egress to it by a driveway which led only from the garage in a southeasterly direction on the Clayton property, then across the entire rear of the Campbell property and over a portion of the Jensen property (which adjoins the Campbell property at the southeast) to reach Smith

Avenue. There is a "cut-out" in the curb of Smith Avenue on the Jensen property to permit ingress and egress. When first used by Miss Smith the Campbell and Jensen properties were unimproved by dwellings but there was a barn on the Jensen property, also used as a garage, access to which was given by the driveway to the garage on the Clayton property. This barn was in bad condition and was demolished some years ago. The driveway leads only to the garage on the Clayton property and has a width of a "car and a half". It is defined by wheel ruts and in part is improved by gravel.

Mr. and Mrs. Schwarz purchased the Clayton property from Miss Smith. They entered into a contract of sale on June 19, 1943 and immediately took possession of the property. At that time the driveway was clearly visible, there being wheel ruts in the driveway. Mr. Schwarz, who was employed in Baltimore City, went to the Clayton property daily after working hours and on week-ends to work around the house and grounds. He used the driveway continuously from June 19, 1943 until the Campbells and Jensens erected a barrier across the driveway sometime between July 3 and July 13, 1963. The use by Mr. Schwarz was an active one. His hobby was building sailing boats. He used the garage for building and storing the sail boats he built and he used the driveway to bring in the building materials for building the boats as well as for taking the boats and his automobile in and out of the garage. After June 19, 1943, the only person who maintained the driveway was Mr. Schwarz. No one objected to his use of the driveway and no permission or license was requested by anyone nor was any permission or license given for the use of the driveway. The children of Mr. and Mrs. Schwarz (one is Mrs. Clayton, one of the appellants and one of the plaintiffs below) used the driveway as a path to reach Smith Avenue on their way to school. After she moved into the dwelling, Mrs. Schwarz used it everyday to walk to the store and used the driveway to drive her automobile to the back of the lot where she frequently parked.

Two neighbors, who lived near the Clayton property for over 40 years, testified that the driveway had been in continuous use for approximately 40 years and a third witness testified that he knew of the existence and use for approximately 30 years. In

snowy weather when these witnesses could not drive their automobiles up and down the steep grade of the only street leading to Elmbank Road, they would park their automobiles on the then vacant Campbell and Jensen lots. The driveway was clearly visible and these witnesses testified that they exercised care to avoid using or blocking the driveway as this would prevent the use of the driveway by Miss Smith and later by Mr. Schwarz.

The original floor of the garage is still in its original location as are some of the original walls.

When Baltimore County widened and raised the grade of Smith Avenue, the County officials observed the driveway, replaced the cut-out in the curb and placed gravel on the driveway to bring it up to the new grade of Smith Avenue. This gravel extended over the portion of the driveway which crosses the Jensen and Campbell properties and there is an insignificant amount of gravel on the portion of the driveway which is on the Clayton property.

The Campbells built their dwelling on the Campbell property in 1958. This dwelling faces Elmbank Road and the Campbell property is known as 6207 Elmbank Road. The Jensens erected their dwelling on the Jensen property in 1962. This dwelling faces Smith Avenue and the Jensen property is known as 6204 Smith Avenue. When the Jensen house was erected, the lumber, equipment and cement blocks were placed along side the driveway, but never blocked it.

Sometime in June 1963, Mr. Jensen sought to purchase from Mr. Schwarz the rear of the Clayton property but Mr. Schwarz indicated that he was not interested in selling the garage separately from the house.

On August 30, 1963, Mr. and Mrs. Schwarz conveyed the Clayton property to the Claytons by a deed in usual form which in the "Being" clause indicated that the property was acquired from Corrie E. Smith and which also contained the usual provision that the property was conveyed "Together with * * * the rights, ways, waters, privileges, appurtenances and advantages to the same belonging or anywise appertaining."

As already indicated, the barrier was erected by the Campbells and Jensens in July 1963. The action for damages was filed by the Claytons against them on November 15, 1963.

· The trial judge in granting the motion of the defendants to dismiss the action at the conclusion of the plaintiffs' case rendered an oral opinion in which he indicated that he found that there was no evidence of hostile possession prior to the erection of the barrier and that the use of the driveway was not exclusive, and hence a right of way by prescription was not established by the plaintiffs. In our opinion, these findings were clearly erroneous and the judgment for the defendants for costs must be reversed and a new trial awarded.

The Maryland law is well established in regard to the elements of an easement by prescription. Judge Markell, for the Court, in *Potomac Edison Co. v. Routzahn,* 192 Md. 449, 461, 65 A. 2d 580, 585 (1949) quoted with approval from this Court's opinion in *Condry v. Laurie,* 184 Md. 317, 321, 41 A. 2d 66, 68 (1945) as follows:

> "In order to establish an easement by prescription, it is necessary to prove an adverse, exclusive and uninterrupted use of the way for twenty years. Adverse use means use without license or permission. Where a person has used a right of way for twenty years unexplained, it is fair to presume that the use has been under a claim of right, unless it appears to have been by permission. *Cox v. Forrest,* 60 Md. 74, 79; *Smith v. Shiebeck,* 180 Md. 412, 24 A. 2d 795."

See *Dalton v. Real Estate & Improvement Co.,* 201 Md. 34, 92 A. 2d 585 (1952) citing with approval and following *Potomac Edison Co. v. Routzahn, supra.* See also a most interesting and informative discussion of the development of easements by prescription in Judge Delaplaine's opinion for the Court in *Wilson v. Waters,* 192 Md. 221, 225-226, 64 A. 2d 135, 137 (1949) and the application of the Statute of 21 James 1, Ch. 16, 2 Alexander's British Statutes (Coe's Ed.) 599, enacted by Parliament in 1623 and made applicable in Maryland by virtue of Article 5 of the Declaration of Rights of the Maryland Constitution.[1]

---

1. There is a helpful analysis of the Wilson case in 10 Md. Law Rev. 272 entitled "Elements of an Adverse User Sufficient to Start the Statute of Limitations Running-Prescriptive Easement" in

We have no doubt that the use of the driveway by both Miss Smith and Mr. and Mrs. Schwarz was an *adverse* use. As has already been stated, adverse use means use without either license or permission. Not only is there no evidence whatsoever that any license or permission was given to either Miss Smith or to Mr. and Mrs. Schwarz to use the driveway, but Mr. Schwarz testified that none had been given. The presumption which arises from the unexplained use of the right of way for twenty years that the use was under a claim of right, has in no way been rebutted by any evidence. See *Cox v. Forrest*, 60 Md. 74 (1883) at pages 79-80.

The trial court was under the impression that the possession was not "hostile" and hence was not "adverse." "Hostility" for the purposes of determining whether possession is adverse, however, does not require a heated controversy or unpleasant manifestation of force. The use is "hostile" when there is possession and use under the claim of right. It is such a use as the owner himself would exercise without permission. See 17A Am. Jur. *Easements*, §76, pages 689-691 (1957) ; 3 American Law of Property, §15.4, page 776 (1952) ; cf. *Hungerford v. Hungerford*, 234 Md. 338, 340, 199 A. 2d 209, 211 (1964). The evidence indicates an actual use by the prior owners of the dominant tenement (the Clayton property) and this is sufficient to make the use visible and notorious. *Bishop v. Stackus*, 206 Md. 493, 112 A. 2d 472 (1955). The prior owners erected the garage so that it faced Smith Avenue and from that public road the driveway led directly to the garage. The driveway led *only* to the garage and to nowhere else. The garage could only be entered by the use of the driveway and by no other means of ingress and egress. Substantially the same garage and the same driveway have been in the same location for over 40 years. The driveway has been maintained exclusively by the prior owners

---

which the author traces the application of the Statute of 21 James 1, Ch. 16 to incorporeal rights and the development of the original fiction of an implied grant to be irrebuttable and conclusive, thus becoming a positive rule of substantive law, in some courts, while other courts (including Maryland) allow the presumption to be rebutted by a showing of express permission and perhaps by other excusatory facts generally available in interrupting the application of the Statute of Limitations.

of the Clayton property. The facts indicate an adverse use and, in similar cases we have so held. *Lichtenberg v. Sachs,* 200 Md. 145, 88 A. 2d 450 (1952) ; *Bishop v. Stackus, supra.*

The trial judge indicated that in his opinion the use was not exclusive because the driveway was used at times by others than the predecessors in title of the Claytons. We do not agree. In *Wilson v. Waters, supra,* Judge Delaplaine, for the Court, stated:

> "We adopt the rule that if a road led at its start only to the premises of the persons using it, such circumstance is sufficient to prove their user under a claim of exclusive right, in the absence of proof to the contrary. If a road, which was started in such manner as to make the user adverse and exclusive, is afterwards enjoyed in common with the public, the user does not lose its exclusive character as the result of the joinder of the public therein." (p. 229 of 192 Md.; p. 138 of 64 A. 2d).

See also *Cox v. Forrest, supra,* 17A Am. Jur. *Easements,* §82, pages 698-699 (1957).

In the case at bar, the evidence is clear that when some of the neighbors used the driveway to park their automobiles on the Jensen or Campbell properties during snowy weather, they were careful not to block the driveway so that the predecessors in title of the Claytons would not be deprived of their use of the driveway. This evidence confirms the exclusive use by the prior owners of the dominant tenement rather than the contrary.

The evidence also indicates that the adverse user of the driveway continued without interruption for approximately 40 years if the use of Miss Smith is tacked to that of Mr. and Mrs. Schwarz. It is clear that the possessions under color of title of the successive predecessors in title may be tacked to complete the 20 year statutory period. *Wilson v. Waters, supra; Cox v. Forrest, supra.* Daily use of the right of way is not required, but only that use normally resulting from the nature of the use itself. It is only required that a cessation of use not indicate a voluntary abandonment of the use by the person claim-

ing it. *Cox v. Forrest, supra.* Indeed we have held that the absence of the person seeking to establish the easement from the dominant tenement for "a few years" during which time the right of way was not used by that person, who, however, resumed the use upon her return, did not prevent the use from being continuous or indicate an abandonment of the use. *Stuart v. Johnson,* 181 Md. 145, 28 A. 2d 837 (1942). Hence, the one year period prior to the purchase of the dominant tenement by Mr. and Mrs. Schwarz when it appeared that Miss Smith did not own an automobile or use the driveway to park an automobile would not result in a lack of continuity in the use in view of our decision in *Stuart.* Even apart from the question of tacking Miss Smith's possession to that of Mr. and Mrs. Schwarz it is clear that the use by Mr. Schwarz immediately after the execution of the contract of sale for the dominant tenement on June 19, 1943 and thereafter until the erection of the barrier in July 1963 was sufficient in itself to establish the adverse and continuous use necessary to create an easement of way by prescription. When the contract of sale was signed, equitable title to the dominant tenement passed to Mr. and Mrs. Schwarz. They took immediate possession. Mr. Schwarz testified that he was at the Clayton property "practically every night, Saturday and Sunday, except when I visited Baltimore or when my Mrs. came up from Baltimore." He used his automobile to get to the property, drove it over the driveway and parked it on the driveway. The deed from Miss Smith to Mr. and Mrs. Schwarz was dated August 2, 1943 and was recorded among the Land Records of Baltimore County on August 10, 1943. It is clear that the possession taken prior to the deed under the contract of sale may be tacked to the possession after the delivery of the deed to establish the necessary period of adverse possession to perfect title in the contract vendee. See 2 C.J.S. *Adverse Possession,* §130(b), page 688 (1936) where it is stated:

> "Nevertheless, a vendee who had possession under an executory contract and subsequently acquired a deed may tack his possession before to his possession after the receipt of his deed to perfect title in himself."

See also *Conaway v. Daly,* 106 N. J. Law 207, 148 Atl. 719 (1930). Cf. *Wilson v. Waters, supra* where the record (but not the opinion) indicates that two of the plaintiffs, Joseph Burley, Jr. and his wife Hattie, held their property for 6 years under a contract of sale prior to obtaining a deed but this fact was not raised to prevent recovery of damages resulting from the blocking of the easement obtained by prescription.

The easement by prescription having been established by the testimony to have existed for the 20 year period prior to the delivery of the deed of August 30, 1963 on the dominant tenement from Mr. and Mrs. Schwarz to the Claytons, this appurtenant right passed to the Claytons and they were entitled to bring the action for damages against the Jensens and Campbells. *Barry v. Edlavitch,* 84 Md. 95, 115-116, 35 Atl. 170, 173 (1896).

> *Judgment reversed and a new trial awarded, the costs to be paid by the appellees.*