Strafford,
Dec. 2, 1930.

## IDA B. BEAN *v.* HENRY K. DOW.

*Samuel D. Felker* and *Everett J. Galloway* (*Mr. Galloway* orally), for the plaintiff.

*Conrad E. Snow* and *Thornton L. Lorimer* (*Mr. Snow* orally), for the defendant.

PEASLEE, C. J.   A right of the plaintiff to use the defendant's wall, and to insist that it remain in place so that she could use it, must rest in some agreement of the owners of the respective premises. *Everett* v. *Edwards*, 149 Mass. 588; 20 R. C. L. 1084.   Such agreement is sought to be implied from the situation existing when the common

owner conveyed the printing office to the defendant. The claim of the plaintiff is that because of that situation this structure became a party wall when the titles to the two buildings were severed.

One distinctive feature of a party wall is that the adjacent buildings are so constructed that each derives its support from the common wall. There was no such condition here. Each building rested upon its separate foundation. Structurally, the plaintiff's building was independent of the defendant's wall, save as to one small timber. The use made of the defendant's wall by the plaintiff was to enclose the open space at the end of her building, and to it there was attached the finish of two closets and a wash-room.

While this did not constitute a party wall, as that term is ordinarily used, it might create an easement of similar character, though of less extent. The theory that the acts of the parties show an intent to grant or reserve certain rights openly exercised at the time the title is severed, is capable of application to a great variety of situations.

The real issue is: What should the parties to such a transaction as the conveyance from Hussey to Dow understand? Would they understand that Dow was obliged to maintain his wall as it then existed, so that Hussey would thereby have the end of his building enclosed and convenient support furnished for his interior finish? Would the thought be that Hussey had no right, or would they contemplate a middle ground?

The location was on a business street, where changes and improvements would naturally be expected. Hussey's use of the wall was not essential to the maintenance of his building, but incidental only. In such a situation, one fair inference as to the intention of the parties would be that they contemplated a continuance of present conditions without complaint by Dow, so long as he permitted his building to stand as it was; but that he was at liberty to make changes when he chose to do so, using due care and doing no unnecessary harm to Hussey's building. *Whyte* v. *Builders League*, 164 N. Y. 429; *Cherry* v. *Brizzolara*, 89 Ark. 309.

And that would be the rule if the situation were to be treated as creating a party wall. In seeking the origin and nature of rights respecting such structures, it has been stated that the law upon the subject is an extension of that relating to the right of lateral support of soil in its natural condition. *Union &c. Bank* v. *Nesmith*, 238 Mass. 247. From this it is argued that the right of party wall support is absolute. But it is manifest that the analogy is not perfect, and the comparison breaks down where differences occur. The state

of the soil is natural; the party wall is artificial. The former is permanent, the latter in some degree temporary. Being artificial and temporary, the correlative attributes assigned to it by the law should be limited to the evident design of its joint creators. That is, the doctrine of reasonableness should control, in the absence of express agreement. " . . . the rights of the owners in it are found in their presumed intention in the mutual grant of a party wall, rather than by classifying it with other estates and deducing its qualities from the name given to it." *Everett* v. *Edwards*, 149 Mass. 588, 590.

Neither abutter is deprived of the right to improve his property. He may add to his old wall and build new, doing no unnecessary damage. *Matthews* v. *Dixey*, 149 Mass. 595. So if it be out of repair, he may rebuild the whole. *Partridge* v. *Gilbert*, 15 N. Y. 601; *Campbell* v. *Mesier*, 4 Johns. Ch. 334; *Gage* v. *Gage*, 66 N. H. 282, 285. While cases are to be found restricting such rights, denying the authority to rebuild or making the actor responsible for all damage or resulting loss, whether caused by negligence or not, it appears to us that they are not founded in reason.

But whatever the true rule may be as to a party wall standing upon the land of both owners, and made such in perpetuity by the deeds of the parties, implied grants cannot be extended beyond that which is in fact reasonable. And since the plaintiff's rights here involved are all implied, they are of necessity limited by the bounds of reason. The rights asserted depend upon the surrounding circumstances, and modern conditions and ways of doing business are entitled to consideration. *Hieatt* v. *Morris*, 10 Oh. St. 523.

While there is a difference among the authorities as to the nature of the rights respecting a party wall, the true theory appears to be that the right of each in that part upon the property of the other is an easement. The extent of such easement should be determined by the application of the doctrine of reasonableness (*Olcott* v. *Thompson*, 59 N. H. 154), rather than by arbitrary rules supposed to govern the particular easement called a right in a party wall. In the numerous decisions discussing the right to do some particular thing with or to a party wall, there has been a constant effort to demonstrate that the conclusion reached was reasonable. This correct test has been more often applied than named.

When the wall is on the land of both there are troublesome questions touching repair or rebuilding of the part on the other's land. There is no such issue here. The wall was on the defendant's land. Such right as the plaintiff had was an easement, imposed upon the

defendant's property. On the other hand, the defendant owned the whole wall, subject only to the plaintiff's easement. In such a situation no question arises as to the right of the owner of an easement to make changes in the servient estate in order to have the full use of his right therein or thereover. The issue here is simply that of the right of the owner of a servient estate to make changes which interfere with what the owner of the dominant estate might desire. It is not a question of interfering with the right of the dominant, but rather of the legal limit of the domination.

As before pointed out the rule of reason delimits the rights implied from the situation, as well as the exercise of those rights. Cases holding that the primary inquiry is whether there is a party wall, and, when this is answered affirmatively, that certain fixed limitations of conduct apply because there is a party wall, are not authority here. The rule here is that the whole matter is to be dealt with on the basis of reasonable implication of right and reasonable exercise thereof.

*Doe* v. *Morrell*, Smith 255, might be thought to go a long way towards sustaining some of the theories supporting the rule that the right of the dominant estate is absolute and not limited by reason. In that case each of the parties was the owner of half of a house, the division line running through the front door, entry, stairway and chimney. Morrell's half became untenantable and not worth repairing; and the fire wards, deeming it a dangerous fire hazard, ordered it repaired, or otherwise rendered innocuous. Thereupon Morrell tore it down, doing no unnecessary damage; and suit by Doe followed. A recovery was based upon the ground that Morrell's estate "is not his own in an absolute, exclusive sense; because Doe has a right to the enjoyment of it." *Ib.* 258. This reasoning fails to consider the lack of absoluteness which inhered in Doe's right to the easement as well as in Morrell's title to the tangible property.

In the notes to that case it seems to be conceded that Morrell was not bound to repair. The decision has never been relied upon as an authority; and in so far as it holds that Doe had any easement beyond the reasonable continuance of Morrell's half of the house it is not to be followed. It may be that if the state of disrepair had resulted from the defendant's failure to keep in reasonable repair, fault on his part could be found. But in the absence of such finding, it is difficult to perceive any rational ground for holding that Doe's rights had been invaded. *Union &c. Bank* v. *Nesmith*, 238 Mass. 247.

The statement in *Gage* v. *Gage*, 66 N. H. 282, 284, that Doe would have had a remedy in equity to compel repair by Morrell, would be

sound if it were also true that the conclusion that Morrell invaded Doe's rights by tearing down were sound. But the correlative rights and duties of the parties there could hardly be deemed to be perpetual. The time would come when the old house was beyond repair, on Doe's side as well as Morrell's, and then all obligation would be at an end. It is certain that there was no contemplation of a duty to repair after Morrell's part, reasonably kept in repair, became unfit for further use. The law is not so unreasonable as to treat the parties' agreement as extending an unexpressed term thereof beyond the bounds of reason. The element of contemplated termination of the existence of the structures involved, and the consequent cessation of mutual relations (*Bartlett* v. *Peaslee*, 20 N. H. 547), sharply differentiates *Doe* v. *Morrell*, from the mill-dam cases, with which it is grouped in *Gage* v. *Gage*. Where the right arises by implication, it ceases upon the destruction of the buildings. *Heartt* v. *Kruger*, 121 N. Y. 386.

In the solution of the problem of reasonable implication of right granted or reserved, a question arises as to the sufficiency of the evidence to sustain a finding of grant or reservation. It cannot be found because it would be convenient to have the right. A large degree of necessity must be shown. *Sandford* v. *Boss*, 76 N. H. 476, and cases cited. It must be such that neither of the parties could reasonably have thought that the right was not granted. Necessity must be shown, not because it creates the right, but because it furnishes satisfactory proof of the understanding of the parties. The right is granted or reserved because the parties so agreed. Their agreement is shown by the fact of necessity.

Here, as in other contracts, there must be a meeting of the minds. It is true that such consensus may be only theoretical, since the party is held to a reasonable interpretation of his acts. But the same is true of verbal contracts. One is not heard to say that he did not understand his words to mean what the other party might reasonably understand them to mean. In both cases the standard is external. "Where a concurring intent is proved, it is merely a short way of showing that by conduct mutually intelligible the parties have expressed themselves each to the other." *Woburn National Bank* v. *Woods*, 77 N. H. 172, 176.

Judged by this standard, and taking all the surrounding circumstances into consideration, it cannot be concluded that the parties to the Hussey-Dow deed understood that Dow was obliged to maintain his wall for the benefit of the incidental use being made of it by

Hussey. Seeking to impose upon Dow a certain implied understanding, it is incumbent upon Hussey's grantee to show that Dow could not in reason have understood the matter otherwise. Failing of this, she fails to make out her claim against him, in this aspect of the case.

The defendant had a right to remove his wall, for the purpose of building a new and better one. In doing this, he was bound to refrain from inflicting damage upon the plaintiff by conducting operations in a negligent way. Whether he could remove the wall and leave the space permanently open, and whether the plaintiff will have a right to attach finish to the new wall, are questions not presented in this case.

It follows from the foregoing considerations that the verdict must be set aside. It will be open to the plaintiff to retry the case upon the issue of negligence.

Exception was also taken to the exclusion of evidence of Hussey's statement to Dow, at the time of the conveyance to him, that he might remove his building whenever he chose. As this evidence related solely to the issue of right to remove, the question presented by the exception becomes immaterial.

*Verdict set aside.*

Snow, J., did not sit: the others concurred.