4 So.2d 149

### NABERS et al. v. WISE et al.

6 Div. 864.

Supreme Court of Alabama.

Oct. 9, 1941.

Bowers & Dunn and Thos. F. Mc-Dowell, all of Birmingham, for appellants.

Wm. S. Pritchard, Peyton D. Bibb, David R. Solomon, and Victor H. Smith, all of Birmingham, for appellees.

BOULDIN, Justice.

This appeal is from a decree overruling demurrers to a bill in equity.

The litigation grows out of a controversy touching the rights of the respective parties in relation to a brick wall which has served for some forty years as a common or supporting wall for buildings erected on adjoining lots in the City of Birmingham.

The bill discloses the following: Lot 15, Block 85, in the Elyton Land survey, is 50 feet by 140 feet.

In 1886 the *east* half of this lot was acquired by Marion A. May. He held a fee-simple title. About 1890 he erected a three-story brick building on this lot, the west wall being on his lot, and extending to the line of the adjoining lot. This is the wall now in question.

It is 16 (18) inches at base, reduced 12 inches, and finally to 8 inches in thickness at the top. The shelves are on the east side. The face on the outside of the building was and is perpendicular.

In 1898 Marion A. May purchased an undivided one-half interest in the *west* half of lot 15, receiving a warranty deed from F. D. Nabers and wife.

Prior to 1901, May being the sole owner of the *east* half of the lot and his building erected thereon, and May and Nabers being owners of the *west* half as tenants in common, they erected a three-story brick building of commercial type on their lot, "resting said building on the east against the west wall" of the May building, "thus saving May and Nabers the cost of building an eastern wall to their new building."

The floor and roof joists of the new building were merely inserted into openings cut into the wall a depth of 4 to 6 inches; the rear brick wall was erected alongside the existing wall. Neither joists nor walls were anchored or bonded into the May wall. Thus the buildings stood until 1940. Meantime the titles to the respective properties had changed hands. Upon the death of Marion A. May in 1908, his title in both properties passed by his will to his wife, Mary J. May.

In 1911, Mary J. May conveyed by warranty deed her undivided half interest, in the *west* half of the lot, to Virginia Nabers. This deed, made exhibit to the bill, describes the property merely as the west half of lot 15, etc., making no reference to an interest or easement in the wall supporting the building thereon.

The present owners of this property, respondents to this bill, derive title, so far as appears, through F. D. Nabers and Virginia Nabers.

The title to the east half continued in Mary J. May, devisee, until her death in 1920, when it passed to John A. May and others, as devisees under her will, and was so held until 1924, when these devisees conveyed same by warranty deed, making no reference to any servitude or easement for support of the building on the west half of the lot.

The present owners of this east half, complainants in this bill, derive title

through mesne conveyances from successive owners, all holding under warranty deed, making no reservation or reference to any servitude, etc.

Complainants became the owners of this property in March, 1940. The building thereon was in process of decay for want of maintenance and repair; the wall in question had deteriorated during the half century since erection.

The property was purchased with a view to demolish and remove the building and erect on the east half of lot 15 a new and modern building suited to its location. Accordingly a permit was obtained to demolish the building. When this was well under way respondents called in the building inspector of the city looking to a protection of their building against collapse by removal of its supporting wall. He ordered a suspension of the wrecking proceedings. An architect was engaged by respondents to make examination and advise measures to protect their building. He advised in detail the conditions found and the measures suggested to protect respondents' building against the giving away of this wall and consequent injury to their building.

Without detail, it will suffice to say these measures included tie-rods run through the building, the placement of cement blocks and channel bars on the east exterior of the wall and held tight with washers and nuts. The architect's report concluded: "The above suggestions for anchoring the wall should be sufficient for a period of time, but should not be considered a permanent cure owing to the age of the wall, which, because of its height and the lack of mortar, together with the fact that it runs only 12″ thick for two stories in height, means that sooner or later it must be replaced with a new wall."

Complainants, being advised of this proposal, protested, denied the right to thus take dominion over the wall, denied that respondents had any right to interfere with the razing of the wall; urged that the protection of respondents' building was a matter for respondents by installations wholly on respondents' land, etc. Nevertheless, the proposed bracing and anchorage of respondents' building to the wall was installed. Thereupon, the pending bill was filed praying for a mandatory injunction to remove all such installations, and to enjoin respondents from interference with a demolition of the wall. Respondents' demurrers, which were overruled, challenged the equity of the bill, and certain aspects thereof.

■ When two adjoining lot owners, by agreement, erect a wall, resting partly on the lands of each, to serve as a common wall for the buildings erected or to be erected on each of the lots, it becomes a party-wall with such incidents as may be stipulated in a lawfully binding agreement. Unless so stipulated, the parties do not become tenants in common of the wall, but each owns the fee in the portion standing on his lands, subject to a cross-easement in favor of each upon the portion owned by the other by way of user as a supporting wall for his building. Graves v. Smith, 87 Ala. 450, 6 So. 308, 5 L.R.A. 298, 13 Am. St.Rep. 60.

■ A wall so erected at joint expense becomes a party-wall as matter of law, in the absence of express contract. McMinn v. Karter, 116 Ala. 390, 22 So. 517.

■ When one adjoining lot owner builds on his own property, one wall flush with the line, but resting wholly on his own property, the adjoining owner acquires no interest nor easement in such wall. He cannot acquire such interest other than by grant, or by prescription raising a presumption of a grant. He cannot, as of right, use such wall as a common wall, or as lateral support for a building, thereafter erected on his own lot. The owner of the wall may raze same at will. Bisquay v. Jeunelot, 10 Ala. 245, 44 Am.Dec. 483; Moody v. McClelland, 39 Ala. 45, 84 Am. Dec. 770.

The factual situation here presented differs from either of those above noted.

This wall was originally erected by Marion J. May as part of his building on his own lot. Later he acquired a half interest in the adjoining lot. Thereupon he and his co-tenants erected the building thereon making this wall a part of the new building, one of the walls thereof, essential to its existence as a building. The wall thus became a common wall for both buildings by his own act and in his own interest as owner of one lot, the building thereon, and part owner of the other lot and the building thereon. Thus matters stood when both properties passed by devise to his wife and so continued until 1911, when Mrs. May conveyed her half interest in the

west lot and building to Virginia Nabers who, we infer, had already succeeded to the other half interest.

■ Up to this time the status was not that of separate ownership of the adjoining properties, but the case of a common wall erected and utilized by a party having a property interest in both lots and buildings thereon. What property right did Virginia Nabers acquire in this wall by the warranty deed to a half interest in this west lot? Keeping in mind that the wall was wholly on the adjoining lot, such conveyance could not pass the estate of a tenant in common in the wall, nor any portion of the wall in severalty. Such is the inexorable logic of Graves v. Smith, supra.

But we are clearly of opinion that she did acquire an easement in this wall for the support of her building as conveyed to her. This wall had by the act of the owner of the building on the east lot been made a wall of the building on the west lot, essential to the existence of the building as it was when conveyed. The sale value of the property was enhanced by presence of this wall as a part of the building passing with the lot. Here was an easement appurtenant, passing with a conveyance of the lot itself, without any reference to such easement in the deed. Freeman on Cotenancy and Partition, 2d Ed., § 98; 47 C. J. 1331, § 20; Kahn v. Cherry, 131 Ark. 49, 198 S.W. 266; Schaefer v. Blumenthal, 169 N.Y. 221, 62 N.E. 175; Rogers v. Sinsheimer, 50 N.Y. 646, 648; Cartwright v. Adair, 27 Ind.App. 293, 61 N.E. 240.

This easement vested in Mrs. Nabers and her successors in title by grant. It is, therefore, immaterial whether a prescriptive right arose. The general averment that the continued use of this wall as a support for her building was "permissive" cannot serve to overcome the averments disclosing a grant, a holding as of right.

It is averred that complainants had no knowledge of such easement; that the structural work in the building concealed the fact that this wall was a common wall of both buildings.

■ The easement was possessory, an actual use of the wall in question. The structural work is not supposed to expose the connection of the buildings to the wall. By measurements complainants could have readily discovered the wall was wholly on their lot, and of necessity was a supporting wall for respondents' building. They were charged with notice of the easement. Authorities, supra.

This brings us to consider the nature and duration of such easement as well as the property rights of complainants in their entire lot.

Many cases deal with party-wall agreements and statutes pertaining to the subject. We have no statute. No express agreement defines the rights and obligations of these parties. We must apply general principles of law to the factual situation disclosed by the bill.

■ The easement of a party-wall carries no right to lateral support from the building of the other party. Complainants had the full right to remove the building on their lot taking due care not to weaken the wall itself so as to endanger respondents' building. Note 9 A.L.R. 1329.

■ Neither did this easement extend to a perpetual servitude upon the ground upon which the wall stood. Being the sole property of complainants the case, in some respect, is different from a party-wall in which each party owns in severalty part of the ground on which the wall stands.

This easement was limited to the wall itself. Its duration was limited to the life of the wall, that is to say, continued undecayed and adequate within itself to serve as a support to respondents' building.

The right of complainants to remove their old building and erect a new one suited to the time and place, and covering their entire lot is a valuable property right inherent in ownership of the lot.

■ So, it is generally held such owner may remove a party-wall on his own land for such purpose, notwithstanding the wall may not have decayed or become inadequate as a support to the adjoining building. In such case, the easement in the old wall does not extend to the new, save upon terms agreed upon by the parties.

What obligations the party removing such wall is under to the owner of the easement thus discontinued is not now for decision.

■ The averments of the bill, including the report of respondents' architect, followed by the measures taken by respondents to shore up this old wall, sufficiently disclose the right of complainants to terminate the easement by proper measures. Treating these averments as true on

demurrer, the wall had served its purpose, and the easement had expired. 47 C.J. 1333, § 22; Freeman on Cotenancy and Partition, 2d Ed., § 98, p. 166; 20 R.C.L. 1083, § 3, p. 1087, § 9, p. 1093, § 15; note, 85 A.L.R. 288 et seq.

■ Respondents were without right to take possession of this wall standing on complainants' lands, shore it up for permanent or indefinite use as a wall for their building, thus ousting the complainants of the possession and proper use of their own property.

We do not hold the installations unlawful as a temporary emergency if confronted with unexpected peril to their building by wrecking operations. Complainants, if the averments of the bill be sustained, were entitled to relief by mandatory injunction for the removal of these installations, the decree of the court being so molded as to give respondents reasonable opportunity to protect their building by installations on their own property. Complainants are under no duty to enter upon respondents' premises for such purpose.

What, if any, incidental relief should be decreed must be determined on the presentation of the full case on both sides.

Complainants write into the body of their bill the averments of a statutory bill to quiet title. Code of 1940, Tit. 7, § 1109 et seq.

■ A prayer for such statutory relief is added. While the bill avers peaceable possession in general terms, the express averments disclose that respondents have been long in the possession and enjoyment of the easement, the subject of the litigation. We recognize the rule that such statutory bill may set up the claims of the opposing parties; and the further rule that a party may not by trespass acquire a possession which will defeat the purposes of the statute.

■ But here the very question litigated is the possessory right under a long standing easement. The statutory bill is not the appropriate procedure in such case. The demurrers directed to this feature of the bill should have been and are here sustained. The decree, as thus modified, is affirmed.

Modified and affirmed.

GARDNER, C. J., and BROWN and FOSTER, JJ., concur.