149 So.2d 773

**WATERMAN STEAMSHIP CORPORATION
et al.**

v.

**McGILL INSTITUTE.**

1 Div. 916.

Supreme Court of Alabama.

Dec. 21, 1961.

Rehearing Denied Feb. 21, 1963.

John W. McConnell, Jr., and Armbrecht, Jackson, McConnell & DeMouy, Mobile, and John J. Coleman, Jr., J. Vernon Patrick, Jr., and White, Bradley, Arant, All & Rose, Birmingham, for appellants.

482

Vincent F. Kilborn and Benj. H. Kilborn, Mobile, for appellee McGill Institute.

McCorvey, Turner, Johnstone, Adams & May, Mobile, for appellee owners.

LAWSON, Justice.

The appeal is from a final decree of the Circuit Court of Mobile County, in Equity.

This litigation arose out of a controversy concerning the rights of the respective parties in relation to a brick wall which has served for more than twenty-five years as a common or supporting wall for buildings erected on adjoining lots.

The lots involved are located in the City of Mobile within the block bounded on the north by St. Louis Street, on the east by Water Street, on the south by St. Michael Street and on the west by Royal Street.

For the purpose of a better understanding of the issues presented, we are including in the opinion a rough sketch. It is our understanding of the general location of the property involved as indicated by the pleadings and evidence, including certain exhibits.

A part of Lot 1 and all of Lots 2 and 3 were conveyed on March 12, 1897, by Felix McGill to McGill Institute, an educational corporation formed for the purpose of providing young men of the Catholic faith with the advantages of an education, free of cost.

A five-story brick building known as the McGowin-Lyons Building was constructed on Lot 3 in 1907.

On March 28, 1930, McGill Institute conveyed that part of Lot 1 which it owned and Lot 2 to Powell, Feeks, Duval Realty Company, Inc., a corporation. At the time of that conveyance the old cotton warehouse was on and apparently covered all of Lot 2. A livery stable was situated on a part of Lot 1. We construe the record before us as showing that the stable was approximately thirty feet long and twenty feet wide. It extended from A on the diagram southwardly a distance of thirty feet and extended westwardly from the west wall of the McGowin-Lyons Building a distance of twenty feet. The roof of the stable was supported by the west wall of the McGowin-Lyons Building, which was situated entirely on Lot 3.

The Realty Company destroyed the livery stable sometime between 1930 and 1933, probably in 1932, and in 1933 constructed on Lot 1 an automobile parking garage now known as the Automobile Hotel. The parking garage was so constructed that the only support for the easternmost part of its roof was steel members bolted to the west wall of the McGowin-Lyons Building. The bolts extended into the brick for a distance of several inches but did not go through the wall into the building.

The roof of the parking garage was attached to the McGowin-Lyons Building in the manner described above for a distance of approximately eighty-eight feet, from A to B on the diagram. The thirty feet of the roof immediately south of A was attached to the wall in approximately the

same places that the roof of the livery stable had been attached.

The parking garage was operated on Lot 1 by the Realty Company from 1933 until 1938, at which time it was leased to one Fable, who operated it until 1947.

In 1938 the Realty Company sold Lot 2 back to McGill Institute.

On December 2, 1947, the Realty Company leased the parking garage to Waterman Steamship Corporation, a corporation, and Waterman subleased that property to Mobile Parking Stations, Inc., a corporation, on December 23, 1947.

On or about November 22, 1956, the Realty Company deeded to its shareholders, Gertrude Feeks, O. H. Powell, Daisy B. Craig, Philip E. Duval, and Craig S. Duval the parking garage property now known as the Automobile Hotel. The shareholders of the Realty Company will be hereinafter sometimes referred to as the Owners.

In the early part of 1957 some of the bolts pulled loose from the wall of the McGowin-Lyons Building and as a result the easternmost part of the roof of the parking garage sagged. Waterman, or its sublessee, Mobile Parking Stations, contacted an agent of McGill Institute and expressed a desire to have the roof put back in place by placing bolts all the way through the wall of the McGowin-Lyons Building and attaching those bolts to metal plates on the inside of the building.

This was the first time that an agent or representative of McGill Institute had actual knowledge of the fact that the west wall of the McGowin-Lyons Building had been used as support for the roof of the parking garage. McGill Institute would not agree to the proposal made by Waterman or Mobile Parking Stations.

In May of 1958 McGill Institute filed its bill in the Circuit Court of Mobile County, in Equity, against the Owners and against Waterman and Mobile Parking Stations, wherein it prayed that the court order the issuance of a mandatory injunction re-

quiring the appropriate respondent or respondents to remove from the wall of the McGowin-Lyons Building the attachments which support the roof of the parking garage building. McGill Institute also prayed that the court enjoin the respondents from attaching the roof or any other object to the wall of the McGowin-Lyons Building in the future.

The respondents filed answers in which they asserted their right, based upon purchase and prescription, to maintain the connection between the roof and the wall. Among other defenses, the respondents asserted that McGill Institute was guilty of laches and that it was estopped to challenge the right of the respondents to maintain the connection.

Following a hearing at which the testimony was taken ore tenus, the trial court rendered a decree wherein the respondents were enjoined from using, fixing to, tying to or obtaining support from the west wall of the complainant's building known as the McGowin-Lyons Building in any way for any improvements on the Automobile Hotel property. The court further ordered the respondents to remove the existing attachments from the complainant's wall within twenty days. The primary obligation to remove the existing attachments was placed upon Waterman and Mobile Parking Stations.

From that decree Waterman and Mobile Parking Stations appealed to this court.

■ This court has said that when one adjoining lot owner builds on his own property a wall flush with the line, but resting wholly on his own property, the adjoining owner acquires no interest or easement in such wall. He cannot acquire such interest other than by grant or by prescription raising a presumption of a grant. He cannot, as a right, use such wall as a common wall, or as lateral support for a building thereafter erected on his own lot. Nabers v. Wise, 241 Ala. 612, 4 So.2d 149, and cases cited.

The appellants assert that although the 1930 deed from McGill Institute to the Realty Company contained no reference to an easement, the Realty Company acquired by implied grant an easement in the west wall of the McGowin-Lyons Building, which easement was appurtenant to Lot 1 in that the roof of the livery stable then situated on Lot 1 was attached to and supported by the west wall of the McGowin-Lyons Building, which McGill Institute also owned.

■ Even if appellants are correct in that assertion, it does not follow that the Realty Company, after demolishing the livery stable, had the right to use the west wall of the McGowin-Lyons Building as support for an entirely new and different building which placed a considerably larger burden on the wall. 357 East Seventy-sixth Street Corp. v. Knickerbocker Ice Co., 263 N.Y. 63, 188 N.E. 158; Lotz v. Hurwitz, 174 La. 638, 141 So. 83; Bean v. Dow, 84 N.H. 464, 152 A. 609; Heartt v. Kruger, 121 N.Y. 386, 24 N.E. 841, 9 L.R.A. 135; Udell v. City Title Insurance Co., 12 A.D.2d 78, 208 N.Y.S.2d 504.

Erecting an entirely new building on an old wall falls into the category of convenience rather than of necessity, and reasonable necessity is usually said to be the basis of the kind of easement here sought to be *implied.* See Crawford v. Tucker, 258 Ala. 658, 64 So.2d 411; Roberts v. Monroe, 261 Ala. 569, 75 So.2d 492.

Cases may be found where one the buildings was remodeled, added to, or extensively reconstructed and the easement was held to continue, but we have found no case, and none has been cited, where the *implied* grant has been construed as extending to the dominant owner, who has demolished the original building, the right of support to an entirely new and different building of such construction as to increase materially the burden on the wall of the servient owner. The cases of Nabers v. Wise, supra, and Graves v. Smith, 87 Ala. 450, 6 So. 308, 5 L.R.A. 298, relied upon by appellants,

both dealt with entirely different factual situations. Cf. Carley v. Lawrence, 7 Cir., 170 F.2d 381, where the building of the servient owner was destroyed.

The appellants also contend that under the evidence their lessors, the Owners, acquired an easement of support in the west wall of the McGowin-Lyons Building by prescription and they insist that the trial court erred in not so holding.

We have expressions in some of our cases to the effect that an easement or right of support for a building by another building can be acquired by prescription, but such expressions were not necessary to the holdings in those cases. See Bisquay v. Jeunelot, 10 Ala. 245; Graves v. Smith, supra; Nabers v. Wise, supra.

■ The general rule seems to be that a right of support for a building by another building cannot be acquired by prescription except where it involves the placing of beams or other parts of a building in a wall upon adjoining land. 4 Tiffany, Real Property, § 1194, pp. 557, 558 (3d Ed., 1939); Carley v. Lawrence, supra.

■ In the instant case, as we have shown, the steel members which support the parking garage roof were bolted to the wall of the McGowin-Lyons Building by bolts which extended several inches into the wall. So, we have a situation whereby the Owners could have acquired by prescription an easement or right of support by the McGowin-Lyons Building. Thompson on Real Property, Vol. 2, Permanent Ed., p. 253, § 629; Dowling v. Hennings, 20 Md. 179, 83 Am. Dec. 545; Barry v. Edlavitch, 84 Md. 95, 35 A. 170, 33 L.R.A. 294; Carley v. Lawrence, supra; McVey v. Durkin, 136 Pa. 418, 20 A. 541.

In support of the claimed twenty-year prescriptive right, the appellants cite and rely upon the following decisions of this court: Walker v. Coley, 264 Ala. 492, 88 So.2d 868; State v. Broos, 257 Ala. 690, 60 So.2d 843; Stearnes v. Woodall, 218 Ala. 128, 117 So. 643; Kidd v. Borum, 181 Ala.

144, 61 So. 100. In those cases we said, in effect, that where the evidence shows an individual, continuous possession of user under claim of right, without recognition of any adverse rights for a period of twenty years, the law presumes all the necessary elements of adverse possession and title without further proof. In Merrill v. Merrill, 260 Ala. 408, 71 So.2d 44, 46, we observed that "prescription is not controlled by an absence of notice," and that "notice does have influence on the question of laches, but not on prescription." See Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820.

But none of those cases involved an easement. The cases cited by appellants all involve possession of and title to a parcel of land itself.

■ In regard to private easements, the rule in this state is different, as pointed out by Judge Rives in Southern Bell Tel. & Tel. Co. v. Southern Precision Pattern Works, Inc., 5 Cir., 251 F.2d 537. In Roberts v. Monroe, 261 Ala. 569, 577, 75 So.2d 492, 499, we said, in part, that:

> "* * * a private easement is not established merely by use of the lands of another for twenty years, or more, but such use must have been adverse to the owner of the premises over which the easement is claimed under claim of right, exclusive, continuous and uninterrupted, with actual or presumptive knowledge of the owner."

See also Loveman v. Lay, 271 Ala. 385, 124 So.2d 93; West v. West, 252 Ala. 296, 40 So.2d 873; Sellers v. Valenzuela, 249 Ala. 627, 32 So.2d 517; Birmingham Trust & Savings Co. v. Mason, 222 Ala. 38, 130 So. 559; Hill v. Wing, 193 Ala. 312, 69 So. 445; Jesse French Piano & Organ Co. v. Forbes, 129 Ala. 471, 29 So. 683.

■ In West v. West, supra, we pointed out that the rule in Alabama as to the establishment of a private easement differs from that recognized by a majority of American courts in that in Alabama the presumption

is that the use is permissive rather than adverse, unless it is shown otherwise. 170 A.L.R. 776, 794.

The cases referred to above deal with private alleys and ways of access but the rule of those cases, in our opinion, should be applied to an easement of the kind here claimed. See Stewart v. White, 128 Ala. 202, 30 So. 526, 55 L.R.A. 211.

The undisputed evidence shows that in 1933 the Realty Company attached the easternmost part of the roof of the parking garage to the west wall of the McGowin-Lyons Building and the attachment continued without interruption for a period of more than twenty years before the bill in this case was filed.

The fact that the wall also supported parts of the McGowin-Lyons Building did not affect the exclusive nature of the use of the wall by the parking garage owners for the support of the roof of their building. To say otherwise would result in a holding that an easement of support could never be acquired by prescription in a wall of an adjoining building.

■ There is no merit in the contention of McGill Institute to the effect that the use of the wall as support for the roof was not adverse to McGill Institute because it held a mortgage on the parking garage property from 1930 to 1956. Any presumption that the mortgagors were occupying the parking garage property with the consent of the mortgagee, McGill Institute, would not extend to the mortgagor's use of other property owned by the mortgagee and not covered by the mortgage.

The evidence shows that McGill Institute did not give its permission for the attachment of the roof to the wall and never consented for it to be so used.

In our opinion, the evidence supports no conclusion other than that the use of the wall by the Realty Company and by the Owners was adverse to McGill Institute.

In its brief McGill Institute says that the record is completely devoid of evidence tending to show that the use of the wall as support for the roof was under claim of right. We cannot agree. Mr. Powell, one of the Owners, who was in charge of the construction of the parking garage for the Realty Company testified to the effect that he did not seek permission of McGill Institute to attach the roof to the wall because he considered that his company had the right to do so inasmuch as the roof of the stable had been so attached.

On cross-examination Mr. Powell did state that he and the "Bishop" were good friends and that he did not claim anything of him. We assume the witness had reference to Bishop Toolen, who seems to have been considered by some of the witnesses as having the right to act for McGill Institute. But we do not think that Mr. Powell's statement that he did not claim anything of the "Bishop" justifies a finding that the Realty Company did not attach and maintain the roof of the parking garage building to the wall of the building owned by McGill Institute under claim of right, in view of the other testimony of Mr. Powell.

After indulging all due presumptions in favor of the finding of the trial judge, who saw and heard the witnesses testify, we feel constrained to hold that the evidence supports no reasonable conclusion other than that the roof of the parking garage was attached to the wall under a claim of right.

We have said, McGill Institute did not have actual knowledge of the use of its wall as support for the parking garage roof until the early part of 1958.

We think the use of the wall as support for the roof of the parking garage was so open, notorious, visible and uninterrupted that knowledge must be presumed.

Although the attachments to the wall could not be seen from the street or from the interior of the McGowin-Lyons Building, they were plainly visible from the inside of the parking garage and from the old cotton warehouse building which McGill Institute owned for many years prior to the time this suit was instituted.

In Nabers v. Wise, supra, the bill averred that complainants had no knowledge of the claimed easement; that the structural work in the building concealed the fact that the wall was a common wall of both buildings.

In regard to that contention this court said:

"The easement was possessory, an actual use of the wall in question. The structural work is not supposed to expose the connection of the building to the wall. By measurements complainants could have readily discovered the wall was wholly on their lot, and of necessity was a supporting wall for respondents' building. They were charged with notice of the easement. * * *" (241 Ala. 617, 4 So.2d 152)

In the instant case the structural work did not conceal the fact that the wall in question was used as support for both buildings.

We are of the opinion that the evidence adduced at the trial shows that the Owners have an easement of support by prescription in the west wall of the McGowin-Lyons Building for the easternmost part of the roof of their building to the extent to which it was used prior to the time the roof sagged. Mary Jane Stevens Co. v. First National Bldg. Co., 89 Utah 456, 57 P.2d 1099; Fleming v. Cohen, 186 Mass. 323, 71 N.E. 563.

The decree of the trial court is reversed and the cause is remanded with direction that a decree be entered in accordance with this opinion.

Reversed and remanded.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.