HOLMES, Retired Appellate Judge.
B & G, L.L.C., appeals from a summary judgment entered in favor of AmSouth Bank, N.A., a national banking association (Am-South), and Sue Anne Cole.
The facts of this case are undisputed, and they have been summarized by the trial court as follows:
“1. This action was brought to determine the rights of AmSouth and Cole, in and to a common wall which serves as the fourth wall of a warehouse owned by Cole (the ‘warehouse’), upon which AmSouth holds a mortgage and which serves as a wall for an adjacent building formerly owned by C & J Company, Inc. (‘C & J Co.’), and now owned by B & G, L.L.C. (‘B & G’). The warehouse originally was constructed in 1980 for Oxford Furniture Galleries, Inc. (‘Oxford Furniture Galleries’), pursuant to industrial development bond financing, for which AmSouth was the trustee and held a mortgage. The warehouse is loeated at lots 1, 2, 3, 4, and 5 of Block Eighty-one, City of Birmingham.
“2. Pursuant to the terms of the bond indenture, AmSouth foreclosed its interest in the warehouse.
“3. AmSouth then sold the warehouse to William M. Cole and Sue Anne Cole. Pursuant to the terms of the purchase agreement, AmSouth agreed to bring this declaratory judgment action to establish the relative rights of the parties hereto with respect to the wall, defined below.
“4. AmSouth financed the purchase of the warehouse by the Coles and currently holds a mortgage upon it, which was recorded on October 1, 1993, as Instrument 9313/1654 in the Probate Court of Jefferson County.
“5. C & J Co. was incorporated in or around 1950 by Bonnie Chew and Richard L. Jeffers, who were the two original shareholders. C & J Co. was the holding company for various real estate interests of Bonnie Chew.
“6. Oxford Furniture Galleries also was incorporated in or around 1950 by Bonnie Chew and Richard Jeffers. Bonnie Chew eventually purchased Jeffers’s interest in both corporations.
“7. In 1980, when the warehouse was constructed, Bonnie Chew was the president of both C & J Co. and Oxford Furniture Galleries, and both corporations ■yere closely held and had the same shareholders.
“8. After the construction of the warehouse in 1980, Bonnie Chew passed away in 1985, and his interests in C & J Co. and Oxford Furniture Galleries were passed through his estate to his son, Lanier Chew.
“9. At all pertinent times, C & J Co. and Oxford Furniture Galleries were both closely held corporations with the same officers and directors.
“10. C & J Co. owned the real estate ... [located on] lots 6, 7, 11, 12, 13, 14, 15, 16.... Oxford Furniture Galleries leased this property from C & J Co.
“11. Oxford Furniture Galleries also leased the warehouse from the Industrial Development Board of Birmingham, and the warehouse was located on lots 1, 2, 3, 4 and 5 of Block Eighty-one, Birmingham.
“12. Oxford Furniture Galleries was the company through which the Chew family operated its furniture business.
*1265 “13. The warehouse was constructed to serve as a warehouse for Oxford Furniture Galleries.
“14. C & J Co. owned lot 5, which was conveyed to the Industrial Development Board in consideration for $30,000 in order that a portion of the warehouse might be constructed upon it.
[[Image here]]
“16. Said proceeds were utilized to erect a portion of the fourth wall of the warehouse upon a then existing brick wall of the adjacent building owned by C & J Co., which building is located upon lots 6 and 7 of Block Eighty-one, City of Birmingham. (The common wall between the two buildings, together .with the portion of the warehouse wall which is contiguous with the common wall, shall be referred to as the “wall.”)
“17. Since the brick wall of the C & J Co. building was not as wide, or as tall, as the warehouse, a portion of the warehouse was erected on lot 6 on top of the brick wall and adjacent to the brick wall.
“18. Although a portion of the warehouse was constructed on lot 6, Lanier Chew, president of C & J Co., admitted that ‘it’s treated as if it belongs to lot 5.’
“19. The integrity of the warehouse would be damaged if any portion of the wall is removed.
“20. The wall was utilized as the fourth wall of the warehouse to save money. This would inure to the benefit of Oxford Furniture Galleries and to its shareholder, who also was the shareholder of C & J Co.
“21. The wall was utilized by both C & J Co. and by Oxford Furniture Galleries. In fact, Lanier Chew acknowledged that the wall was treated as a ‘party wall’ by C & JCo.
“22. There is a doorway in the concrete slab portion of the wall which is located on lot 6 (the ‘doorway’).
“23. Prior to taking title to the property on June 8, 1995, B & G had notice of this litigation through the Lis Pendens Notice recorded at Real Volume 9506, page 0521, Probate Court of Jefferson County on May 24,1995.”
As noted previously, AmSouth filed a complaint against C & J Co. and the Coles, requesting that the trial court declare its rights in the common wall. During the pen-dency of the action, C & J Co. sold its interest in the adjacent building to B & G. B & G had notice of the litigation. Therefore, AmSouth amended its complaint to add B'& G as a party. AmSouth also amended its complaint to" realign the Coles as plaintiffs since their interests were aligned with Am-South. We would note that during the preliminary stages of the lawsuit, William M. Cole died. However, his estate was not substituted as a party.
In April 1997 AmSouth and Sue Anne Cole filed a motion for a summary judgment, relying primarily on Nabers v. Wise, 241 Ala. 612, 4 So.2d 149 (1941). B & G responded with its motion for a summary judgment. Thereafter, on June 16, 1997, the trial court entered an order, granting AmSouth and Cole’s motion. ,
In essence, the trial court, in applying the law set forth in Nabers, determined that the wall was a party wall and that B & G had no better interests in the wall than did C & J Co. The trial court further determined that AmSouth, Cole, and their assignees were entitled to utilize the wall for the support of the warehouse and that they were further entitled to use the doorway that was located on a portion of the wall “as long as the doorway is adequate to serve as support to the warehouse.” B & G filed a post-judgment motion, which the trial court denied.
B & G appeals. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
At the outset we note that Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the *1266 moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie ease showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d at 682.
The dispositive issue on appeal is whether the law set forth in Nabers is controlling in this case. We conclude that it is.
In Nabers, the owner of lot A (on the east) erected a building on his property. The west wall of the building extended to the line of lot B, the adjacent lot (on the west). The owner of lot A subsequently acquired a one-half interest in lot B. Thereafter, the owner of lot A and his co-tenants constructed a new building on lot B, making the western wall on lot A a part of the new building. The sharing of the wall on lot A saved the parties the cost of building an eastern wall for the new building. Further, the wall was essential to the existence of the new building. After the owner of lot A died, his interests in both lots passed by devise to his wife, who, thereafter, conveyed her one-half interest in lot B by warranty deed. The warranty deed did not mention the easement.
Based on the above fact scenario, our supreme court held that the wall was a party wall and that the grantee of lot B had acquired an easement for support of the building located on lot B, notwithstanding the absence of a reference to an easement in the deed. In other words, the grantee had acquired “an easement appurtenant, passing with a conveyance of the lot itself, without any reference to such easement in the deed.” Nabers, 241 Ala. at 617, 4 So.2d at 152.
As noted by the trial court, the facts in the instant case are strikingly similar to facts set forth in Nabers. In the instant case the warehouse was constructed for Oxford Furniture Galleries, and the fourth wall of the warehouse also served as the wall for the adjacent building formerly owned by C & J Co.
Both C & J Co. and Oxford Furniture Galleries were incorporated by Bonnie Chew and Richard L. Jeffers, and both were closely held corporations, with the same officers, directors, and shareholders. Bonnie Chew eventually purchased Jeffers’s interest in both corporations. When Bonnie Chew died in 1985, his interests in the corporations passed through his estate to his son, Lanier Chew. Thereafter, C & J Co. sold its interests in the adjacent building to B & G.
It is undisputed that the wall between C & J Co. and Oxford Furniture Galleries was used by both parties. In fact, Lanier Chew acknowledged that the wall was treated as a “party wall” by C & J Co. The wall was utilized as the fourth wall of the warehouse, as well as the wall of the adjacent building owned by C & J Co., in order to save money. Further, the wall is essential to the existence of the warehouse, since the integrity of the warehouse would be damaged if any portion of the wall were removed or destroyed.
Based on the foregoing facts, as well as the law set forth in Nabers, we conclude that there is no genuine issue of a material fact to be resolved by a jury. Porter. Thus, the trial court did not err in entering a summary judgment in favor of AmSouth and Cole.
Consequently, the judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.
MONROE, J., concurs in the result.