THOMAS, Judge.
Greg Colbert and Beth Colbert appeal from a judgment as a matter of law (“JML”) entered by the Escambia Circuit Court in favor of the First National Bank of Atmore d/b/a First National Bank and Trust (“the Bank”). We affirm.

Facts and Procedural Histoi"y

The Colberts own a two-story building in downtown Atmore. The Bank owned a one-story building located to the east of the Colberts’ building; one wall of the Bank’s building abutted one of the outer walls of the Colberts’ building. The Bank’s building already existed when the Colberts’ building was constructed. In *147 late April or early May 2005, the Bank informed the Colberts that it intended to demolish its building. The Bank offered to purchase the Colberts’ building; however, the parties could not agree on a purchase price. After the purchase negotiations ended, the Bank continued with its demolition plans.
Before demolishing its building, the Bank hired a surveying company to determine the boundary lines of its property. The surveying company determined that the boundary line between the Bank’s property and the Colberts’ property ran between the Colberts’ building and the Bank’s building. The Colberts also hired a surveying company to survey the boundary of their property. The survey company hired by the Colberts also determined that the property line between the Colberts’ property and the Bank’s property ran between the two buildings.
The Bank hired Gulf Construction, LLC, to demolish its building. Gulf initially demolished all of the Bank’s building except for the wall that abutted the Colberts’ building. In October 2005, Gulf began demolishing the abutting wall by hand, using small jackhammers. After the first day of demolition of the abutting wall, the Col-berts expressed concern to the Bank over the condition of the wall of their building that was being revealed by the demolition of the wall of the Bank’s building. The wall of the Colberts’ building had bricks that had been laid unevenly and some of the joints lacked mortar. The Bank decided to continue to demolish its wall.
On October 30, 2005, as the demolition work continued, Gulf uncovered a portion of the Colberts’ wall where some of the bricks were missing, resulting in a hole in the Colberts’ wall. Gulf stopped its demolition efforts and notified the Colberts and the Bank of the condition of the Colberts’ wall. No further demolition was done on the Bank’s wall.
On April 14, 2007, the Colberts filed a complaint in the trial court asserting claims of fraud, negligence, wantonness, “willfulness,” and trespass against the Bank and fictitiously named parties.[1] In their complaint, the Colberts alleged that the Bank had damaged their property so that rainwater had begun entering the building through the wall and that they had suffered disruptions to their lives and had suffered mental anguish. The Col-berts requested that the trial court award them compensatory damages, punitive damages, interest, costs, and an attorney fee. The Bank answered the Colberts’ complaint, denying all the Colberts’ material allegations.
The Bank filed a motion for summary judgment on all the Colberts’ claims. The trial court denied the Bank’s motion for a summary judgment, and the case proceeded to a jury trial. At the close.of the Colberts’ case, the Bank moved the trial court for a JML. After hearing extensive argument by counsel for both parties, the trial court entered a JML in favor of the Bank on all the Colberts’ claims. The Colberts appealed to the Alabama Supreme Court. Our supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review

“When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 *148 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).”
Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1152 (Ala.2003).

Analysis

I. Direct and indirect trespass
The Colberts argue on appeal that the trial court erred when it entered a JML on their trespass claims. We will first address the Colberts’ argument that they presented substantial evidence in support of their direct-trespass claim. “ ‘Trespass’ has been defined as ‘[a]ny entry on the land of another without express or implied authority.’ ” Central Parking Sys. of Alabama, Inc. v. Steen, 707 So.2d 226, 228 (Ala.1997)(quoting Foust v. Kinney, 202 Ala. 392, 393, 80 So. 474, 475 (1918)). The Colberts first argue that the Bank trespassed on their property by removing the Bank’s wall because, the Col-berts say, they presented substantial evidence indicating that part of the Bank’s wall was located on the Colberts’ property.
At trial, Sidney Orrell, a professional land surveyor, testified that he had been hired by the Bank to survey the boundary lines of the Bank’s property. Orrell testified that he had determined that the boundary line between the Bank’s property and the Colberts’ property ran down the face of the wall of the Colberts’ building, placing the Bank’s building solely on its property and the Colberts’ building solely on their property. According to Orrell, he reached his conclusion regarding the location of the boundary line after examining the old plats and deeds to the property and by then surveying the property, taking measurements and looking for preexisting boundary-line markers.
Orrell stated that he had placed a cap and nail at one corner of the property line between the two properties. According to Orrell, the cap provides a reference point for the boundary line between the two properties. Orrell testified with respect to the placement of the cap and nail:
“When you have two buildings that are joined together it’s impossible to strike a line between two points because two buildings — there was [no] air between these buildings. They were butted together so, you know, we put our points to the best possible way we can in line with the face of those buildings where they join together.”
When asked by the Bank’s attorney whether “regardless of where a photograph may reflect that that [cap and nail] is located the bottom line is that the property line, according to your map, shows that it divides those two buildings and runs down the face of [the Colberts’] wall,” Or- *149 rell responded that the Bank’s attorney was correct.
William Whittle, a professional land surveyor who had been hired by the Colberts, also testified at trial. Whittle stated that the Colberts had hired him to determine the location of the boundary line between the Colberts’ property and the Bank’s property. Whittle testified that he had determined that the property line between the Bank’s property and the Colberts’ property ran down the face of the Col-berts’ building. According to Whittle, he had determined the location of the property line based on the location of the existing buildings on the block and the location of an original, iron pin that he had found. According to Whittle, the location of a corner marker, such as the cap and nail that had been placed by Orrell, was a piece of information that could be used in determining the boundary line of a property; however, he said, it was not controlling.
The Colberts assert that the location of the cap and nail placed by Orrell shows that part of the Bank’s wall was located on the Colberts’ property. This assertion is not supported by the testimony of Orrell or Whittle. Orrell testified that he placed the corner marker as best as he could to represent the property line that he had calculated. Whittle testified that placement of corner markers such as the cap and nail at issue were only a piece of information used to determine a property line. Both surveyors testified that the property line between the Bank’s property and the Colberts’ property ran down the face of the Colberts’ building. Thus, the Colberts assertion regarding the location of the cap and nail does not represent substantial evidence indicating that the Bank’s wall was partially located on the Colberts’ property. Therefore, the Col-berts have not provided substantial evidence indicating that the Bank entered upon the Colberts’ property when the Bank demolished its wall.
The Colberts also claim that they presented substantial evidence in support of their claim of direct trespass because, the Colberts say, they presented evidence indicating that the Bank crossed onto the Col-berts’ property and created a hole in the wall of the Colberts’ building when the Bank demolished the abutting wall of its building. However, the evidence pointed to by the Colberts does not support that contention. Ms. Colbert did not testify that the Bank had created a hole in the Colberts’ wall. Instead, she testified that the Bank had “revealed a hole in the [Col-berts’] wall.” She also testified that the hole “had started out as a small place on the far end and [that they could] see it being revealed.” Ms. Colberts’ testimony that the hole had been revealed supports an inference that the hole in the wall preexisted the demolition of the Bank’s wall and that the hole became apparent once the Bank’s wall was removed, not that the Bank created the hole in the Colberts’ wall.
The Colberts also rely on the testimony of Myles Reed, a contractor and friend of the Colberts, to support their contention that they presented substantial evidence indicating that the Bank created a hole in the Colberts’ wall. The Colberts’ counsel presented a photograph of the wall to Reed and asked whether it appeared that the Colberts’ wall had been damaged. Reed stated:
“It appears that [the Bank] got a little carried away in this area right in here. If this plane is the same as this plane, which it appears to be, looks like they got into — you know, got into his wall from here, you know.”
On cross-examination, Reed admitted that he was basing his opinion solely on the photograph, that he had not personally *150 inspected the alleged damage to the Col-berts’ wall, and that he was uncertain which portions of the wall in the photograph were the Colberts’ wall and which were the remaining parts of the Bank’s wall. Reed answered “no” when asked by the Bank’s counsel:
“Okay. You haven’t gone back out there to inspect it to verify that that is indeed the case, that those bricks are indeed— this area where we see missing bricks are bricks that were originally in the Colberts’ wall, have you?”
Reed’s testimony that the Bank had caused the hole in the Colberts’ wall was based solely on his viewing a photograph and apparently concluding that, because there was a hole in the wall, it must have been caused by the Bank. Reed’s testimony is mere speculation as to the cause of the hole in the Colberts’ wall. “‘[Evidence which affords nothing more than mere speculation, conjecture, or guess is wholly insufficient to warrant submission of the case to the jury.’ ” Turner v. Azalea Box Co., 508 So.2d 253, 254 (Ala.1987) (quoting Roberts v. Carroll, 377 So.2d 944, 946 (Ala.1979)). Therefore, Reed’s testimony does not provide substantial evidence in support of the Colberts’ claims.
Because the Colberts did not present substantial evidence to the trial court indicating that the Bank had entered their property by demolishing its wall or by damaging the Colberts’ wall, the trial court’s JML on the Colberts’ direct-trespass claim is due to be affirmed.
The Colberts next argue that the trial court erred when it entered a JML in favor of the Bank on the Colberts’ indirect-trespass claim. The Colberts assert that, when the Bank demolished its wall, it exposed the Colberts’ wall to rainwater and that that rainwater intruded through the Colberts’ wall, damaging their building. Thus, the Colberts assert, the Bank’s alteration of its property, such that it allowed rainwater to enter the Colberts’ property, constituted an indirect trespass by the Bank.
In support of their argument, the Colberts cite W.T. Ratliff Co. v. Henley, 405 So.2d 141 (Ala.1981). In Ratliff, the Alabama Supreme Court stated that in order to recover for indirect trespass a plaintiff must prove “ 1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiffs possesso-ry interest; and 4) substantial damages to the res.’ ” Ratliff, 405 So.2d at 145 (quoting Borland v. Sanders Lead Co., 369 So.2d 523, 529 (Ala.1979)). The Ratliff court also stated that “ ‘ “it is not necessary that the foreign matter should be thrown directly and immediately upon the other’s land. It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter.” ’ ” Ratliff, 405 So.2d at 145 (quoting Rushing v. Hooper-McDonald, Inc., 293 Ala. 56, 59, 300 So.2d 94, 97 (1974), quoting in turn Restatement (Second) of Torts § 158, “Liability for Intentional Intrusions on Land” (1965)). Our supreme court held in Ratliff that a landowner was liable for trespass when that landowner had placed sand and gravel on its property such that that landowner was substantially certain that the sand and gravel would flow onto an adjoining landowner’s property.
The Colberts also cite Johnson v. Washington, 474 So.2d 651 (Ala.1985). The defendant landowner in Johnson had removed underbrush and trees from his property and had constructed a paved driveway. Johnson, 474 So.2d at 653. The changes to the defendant landowner’s property changed the natural flow of water *151 on his property, causing it to be channeled onto the plaintiff landowner’s property. Id. Our supreme court held that the defendant landowner could be held liable for indirect trespass, noting that liability may lie when “an upper proprietor ... channels surface water onto the property of a lower proprietor, when it otherwise would have been scattered and diffused, and by so doing causes damage to the lower proprietor.” Id.
In this case, unlike in Ratliff, there is no evidence indicating that the Bank placed any material on its property with the knowledge that it would flow onto the Colberts’ property. This case is also unlike Johnson because there is no evidence indicating that the Bank collected or channeled water onto the Colberts’ property. The rainwater that the Colberts claim entered their property as a result of the Bank’s demolition of its wall had never entered onto the Bank’s property, and the Bank had not in any way changed the natural course of the rainwater or channeled the rainwater onto the Colberts’ property. Thus, we find no legal support for the Colberts’ indirect-trespass claim. Accordingly, the trial court’s JML on the Colberts’ indirect-trespass claim is due to be affirmed.
II. Negligence, wantonness, and “wilfulness” claims
The Colberts’ claims of negligence, wantonness, and “wilfulness” are all dependent on the Colberts’ presenting substantial evidence indicating that the Bank damaged the Colberts’ building. See Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So.2d 665, 679 (Ala.2001) (“The elements of a negligence claim are a duty, a breach of that duty, causation, and damage.”); Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998) (“ Wantonness’ has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.”). The Colberts argue on appeal that the Bank damaged their building by exposing the exterior wall of the Colberts’ building, thereby allowing rainwater to penetrate the wall and that the Bank directly damaged the structure of the wall.
We have already concluded that the Col-berts did not present substantial evidence indicating that the Bank directly damaged the Colberts’ wall. Therefore, the Col-berts’ claim of direct damage to the structure of their wall cannot form the basis for their negligence, wantonness, or “wilfulness” claims.
We now turn to the Colberts’ argument that the Bank damaged the Colberts’ wall by removing the Bank’s wall, thereby allowing rainwater to contact the wall and, consequently, to enter the Colberts’ building. In Nabers v. Wise, 241 Ala. 612, 4 So.2d 149 (1941), the Alabama Supreme Court stated:
“When one adjoining lot owner builds on his own property, one wall flush with the line, but resting wholly on his own property, the adjoining owner acquires no interest nor easement in such wall. He cannot acquire such interest other than by grant, or by prescription raising a presumption of a grant. He cannot, as of right, use such wall as a common wall, or as lateral support for a building thereafter erected on his own lot. The owner of the wall may raze same at will. Bisquay v. Jeunelot, 10 Ala. 245, 44 Am.Dec. 483 [ (1846) ]; Moody v. McClelland, 39 Ala. 45, 84 Am.Dec. 770 [ (1863) ].”
241 Ala. at 616, 4 So.2d at 149. As we noted above, the evidence at trial showed *152 that the Bank’s wall was located entirely on its own property. Thus, the Bank could demolish its wall at will. Id. The only duty the Bank owed the Colberts was to not damage the wall of the Colberts’ building when it removed its own wall. The Colberts’ argument appears to be that the Bank had a duty to protect the Col-berts from the preexisting condition of the Colberts’ own wall. We find no support for this proposition in the authorities cited by the Colberts. See Tucker v. Nichols, 431 So.2d 1263, 1265 (Ala.1983) (stating that in order to secure a reversal “the appellant has an affirmative duty of showing error upon the record”); see also Schiesz v. Schiesz, 941 So.2d 279, 289 (Ala.Civ.App.2006) (“It is not the function of this court to advocate a position on behalf of an appellant or to create a legal argument for the appellant.”). Therefore, the trial court’s JML on the Colberts’ claims of negligence, wantonness, and “wilfulness” is due to be affirmed.[2],[3]
The trial court did not err when it entered a JML in favor of the Bank on all the Colberts’ claims; therefore, we affirm the trial court’s judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. The Colberts later amended their complaint, substituting Gulf for one of the fictitiously named parties. Gulf later entered into a pro tanto settlement with the Colberts. Pursuant to the settlement, the trial court dismissed Gulf from the lawsuit.

. The trial court also entered a JML in favor of the Bank on the Colberts’ fraud claim. The Colberts do not present any argument on appeal concerning their fraud claim; therefore, they have abandoned that claim. See Newson v. Protective Industrial Ins. Co., 890 So.2d 81, 86 (Ala.2003).

. Because we determine that the Colberts did not present substantial evidence in support of their claims, we pretermit the Colberts’ remaining arguments on appeal. See Favorite Market Store v. Waldrop, 924 So.2d 719, 723 (Ala.Civ.App.2005).